PROVIDENCE TOOL COMPANY *v.* CORLISS STEAM ENGINE COMPANY.

Decision in *Evans* v. *Dana,* 7 R. I. 306, reaffirmed, that only easements apparent and continuous, and necessary to the proper enjoyment of the part granted, pass by implication of the grant upon the severance of an estate one part of which has served the uses of another part.

BILL IN EQUITY to enjoin the respondents, the Corliss Steam Engine Company, from shutting up a certain way leading from Charles street to the works of the complainant company, over land of the respondent company.

The bill alleged a contract made on the third of March, 1853, between the respective grantors of the plaintiffs and the defendants for the purchase of land as a site for a machine shop to be erected by an association to be called the Providence Forge and Nut Company—the land to be paid for by stock in the com. pany—the purchasers to furnish all the capital for the erection of buildings, the purchase of machinery and operation of the works. The bill alleged a survey and part grading of the premises on the part of the purchasers preparatory to the erection of the buildings; that after this part grading of the premises, a controversy arose between said original parties as to the right of way now in question, the plaintiffs' grantors claiming that it was included in the contract for the land, the defendants' grantors denying it; that this controversy was settled by compromise, whereby in consideration of varying the proposed southerly line of the purchased premises, the defendants' grantors should grant the right of way; and that thereupon the defendants' grantors,

May 6, 1853, made conveyance by deed of the purchased premises, and as a privilege and appurtenance thereof the alleged easement and right of way.

The answer denied any parol agreement for such way, and the legal validity of such agreement, if any there was, and that the plaintiffs' grantor had any title to the land alleged to have been exchanged for the way ; also that the right of way passed by deed of May 6, 1853 ; and that the complainants' grantors ever had any privilege or use of such way except by sufferance in common with all other persons, or any assignable right of way ; and that the defendants' grantors could encumber their said lands with the easement of way by *parol*, &c., and set up and pleaded Rev. Stat. chap 176, § 8, in bar of this suit.

*B. F. Thurston, for the plaintiff :—*

1. The way was claimed by the complainants, having. been actually marked out by the owners of the land ; and such way having been practically opened with the approbation of such owners, before the making of the deed of the lot of land sold as a means of access to the premises—the same passed under such deed as an appurtenance to the estate sold by implication, although no special mention of such way is made in the deed. Burrill Law Dic., "*Appurtenance ;*" *Bac. Abr.* "*Grant,*" 1, 4, ; *Wetmore* v. *White*, 2 Caines Cases, 87 ; *Archer* v. *Bennett*, 1 Lev. 131 ; *Nichols* v. *Luce*, 24 Pick. 102 ; *Allen* v. *Scott*, 21 Pick, 25 ; *Whitney* v. *Olney*, 3 Mason, 280 ; *Pickering* v. *Staples*, 5 S & R. 107 ; *Swartz* v. *Swartz*, 4 Barr. 253 ; *Murphy* v. *Campbell*, 4 Barr. 480 ; *Atheus* v. *Boardman*, 2 Met. 463 ; *Keep* v. *Waite*, 10 Pick. 138.    It constitutes no exception to the rule, that Corliss & Nightingale were, at the time of the making of the deed, the owners of both the servient and the dominant estates.    See sec. 23, p. 54, Washburn on Easements.    In *Phillips* v. *Phillips*, 48 Penn. 178, the court recognizes the doctrine of the civil law expressed by the phrase *la destination du pere se famille*, as adopted by the common law with the qualification that the easement claimed should be apparent.    See, also, for application of the same doctrine, *Seymour* v. *Lewis*, 13 N. J. 439 ; *Leonard* v. *Leonard*, 7 Allen 277 ; *Lapman* v. *Milks*, 21 N. Y. 505.    Also, Copies case

Year Book 11, Hen. VII. 25 ; *Nicholas* v. *Chamberlain*, Cro. Jac. 121 ; *New Ipswich Co.* v. *Batcheler*, 3 N. H. 190 ; *Morgan* v. *Mason*, 20 Ohio, 40 ; *Richards* v. *Rose*, 9 Exch. 218 ; *Kenyon* v. *Nichols*, 1 R. I 411 ; *Elliott* v. *Rhelt*, 5 Rich. 405 ; *Evans* v. *Dana*, 7 R. I. 310 ; *Nichols* v. *Knowles*, 2 Curt. C. C. 571 ; *Huttemeir's* v. *Albro*, 2 Bosw. 546, S. C. 18 N. Y. 48 ; *Irvin* v. *United States*, 16 How. 613.

II. The acts of Corliss & Nightingale, accompanied with their declarations, together with the fact that they with their associates, Waterman and S. A. Nightingale, actually opened the way to the premises sold, amount to a declaration that such way is for the use of the premises granted, so that the same became an established appurtenance thereof, and annexed to the estate with the same effect as if it had originated by prescription, and the conveyance of the land afterwards to the complainants' grantors included the way so created as an appurtenance. Washburn on Real Property, vol. 2, p. 456 ; *Woodyer* v. *Hadden*, 5 Taunt. 137 ; *Cincinnati* v. *White*, 6 Pet. 431. Although, technically speaking, there is no such thing as a dedication of a way to private use, there are many cases where the right is secured to private individuals, in ways, under circumstances, and upon acts, which would in other cases prove a dedication to public uses. *Bissell* v. *N. Y. Central R. R.* 26 Barb. 633 ; *Aluater* v. *Bodfish*, 11 Gray, 142.

III. The defendants are estopped to deny the existence of the way. A parol agreement having been made before the making of the deed between the grantors and grantees of a parcel of land, that a way over the land of the grantors should be enjoyed by the grantees, and a consideration having been expressly paid therefor, and the grantees having entered into possession of the land and the way, and upon the faith of the existence of the way, expended large sums of money in improvements upon the premises, such grantors are, especially after an uninterrupted enjoyment of the way for eleven years, estopped to deny that such way exists. Even if no specific consideration had been paid for the right of way, but the parties purchasing the land had been induced by the acts of the parties with whom they

dealt, to expend money upon the premises upon the faith of the existence of a way, equity would interfere to protect them from injury. *Foster* v. *Browning*, 4 R. I. 48 ; *Revick* v. *Kern*, 14 S. & R. 267 ; *Le Ferre* v. *Le Ferre*, 4 S. & R. 267 ; *Winter* v. *Brockwell*, 8 East, 308 ; *M'Kellip* v. *M'Ilthenny*, 4 Watts, 307 ; *Swartz* v. *Swartz*, 4 Barr, 373 ; *Wells* v. *Pierce*, 7 Fost. 503 ; *Wendell* v. *Van Rensellaer*, 1 Johns Ch. 354 ; *Tyler* v. *Echart*, 1 Binn. 378 ; *Ebert* v. *Wood*, 1 Binn. 216 ; 2 Am. L. Cas. 755, note to the case of *Revick* v. *Kern* ; *Dutchess of Kingston's case*, and note to same, 2 Smith Lead. Cas. 762 ; *Runlet* v. *Otis*, 2 N. H. 169.

*Currey and Eames, for the respondents :—*

I. The deed of Corliss and Nightingale to Rufus Waterman, May 6th, 1853, excludes all parol agreements relating to the subject matter prior to its date. All such agreements are merged in and expressed by the deed. 1 Greenlf. Ev. § 275 to § 305 ; *Parkhurst* v. *Courtlandt*, 1 Johns. Ch. 273. This is equally the rule in equity as at common law, unless it be alleged that the deed was made by accident, or mistake, or in fraud. Cases above cited, and 3 Greenlf. Ev. § 250 ; *Stevens et al.* v. *Cooper et al.* 1 Johns. Ch. 425, (428-9) ; *Taylor* v. *Baldwin*, 10 Barb. 582, (586) ; *Russell* v. *Kinney et. al.* 1 Sandf'd. Ch. 34, 37, 239. No interest in land for a term exceeding one year can be conveyed or acquired, except by deed in accordance with the statute. This is the inflexible rule at law. 1. In equity, upon a bill averring a parol agreement for the conveyance of or an interest in land for more than one year, if the answer admits the agreement and does not insist upon the statute, decree for specific performance may be made. 2. When the statute is insisted on, decree for specific performance will not be made though the parol agreement is admitted, except on proof of part performance. *Cooth* v. *Jackson*, 6 Ves. 37 ; *Moore* v. *Edwards*, 4 Ves. 23 ; *Blagden* v. *Bradbear*, 12 Ves. 471 ; *Parkhurst* v. *Courtlandt*, 1 Johns. Ch. 273 ; *Phillips* v. *Thompson*, same, 131 ; 2 Story's Eq. Jur. §§ 755, 756, 757. 3. When both the parol agreement is denied and the statute is insisted on, specific performance will not be decreed, unless, 1st. Both the agreement and the terms of it are clearly and conclusively proved. Story's Eq. Jur: § 758 ;

*German* v. *Marchin*, 6 Paige, Ch. 288; *Goncher* v. *Martin*, 9 Watts, 106, (109). 2d. Unless it be also clearly and conclusively established that a specific performance is necessary to prevent a fraud. *Cooth* v. *Jackson*, 6 Ves. 38; *Blagden* v. *Bradbear*, 12 Ves. 471; *Rowe* v. *Teed*, 15 Ves. 375.

II. The inevitable conclusion from the analysis of the evidence is, that neither the agreement for right of way nor the terms of it are clearly and conclusively proved. Nor is it established by the evidence that a deprivation of the way would be a fraud on the plaintiffs. Fraud must be positively proved. It is not a matter to be established upon the mere preponderance of evidence. To sustain the plaintiff's case on the ground of fraud, or of the expenditure of money, it must be conclusively proved that the expenditure was made from no other inducement than upon the faith of the contract, or would not have been made but for such contract, and that the breach of the contract would be an injury amounting to a fraud. *Byrne* v. *Romania*, 2 Edwards, Ch. 445–6; *Phillips* v. *Thompson*, 1 Johns, Ch. 148; *Wallace* v. *Brown*, 2 Stockton, 308–9; *Cooper Ex parte*, 19 Vesey, 447, *note*; 2 Story's Eq. Jur. § 762. This is the rule as to the expenditure of money to take a parol agreement out of the statute. *Phillips* v. *Thompson*, 1 Johns. Ch. 148; *Frame* v. *Dawson*, 14 Ves. 386; *Lacon* v. *Martins*, 3 Atkins, 4; *Buckmaster* v. *Harrop*, 7 Ves. 341 and notes; *Lady Thynne* v. *Earl of Gifford*, 2 H. L. Cas. 158.

After commenting at length on the testimony in the cause, they contended that the following conclusions followed from their analysis of the evidence: 1. No contract for any way is conclusively proved, or—2. If there be evidence of an agreement for some way, the terms of such agreement as to the kind of way are too ambiguous and uncertain to admit of being enforced. *Boston & Maine R. R.* v. *Babcock*, 3 Cush. 222, 232; *Coburn* v. *Thompson*, 2 Wheat. 336, (241); *King's Heirs* v. *Thompson*, 9 Peters. 204, (218); *Stoddart* v. *Bouvie, Ex'r.*, 5 Md. 18, (35); *Dodd* v. *Spencer*, 21 Conn. 476, (479). 3. It is not proved that the expenditures of the plaintiffs' money were made upon the faith of any agreement for the right of way, or had any particular reference to it. 4. It is not proved that the privilege

of the way was, is or would be essential to the enjoyment of a right, or that its denial would be any considerable injury, if in fact any injury whatever.

III. The evidence does not prove that the way in question was such an easement or privilege in the defendants' land appurtenant to the granted premises as would pass with the deed of those premises. *Grant* v. *Chase,* 17 Mass. 446; *Kenyon* v. *Nichols,* 1 R. I. 417; *Evans* v. *Dana,* 7 R. I. 306; Gale and Whatley's Easements, 18, 19, 32; Washburn's Easements and Servitudes, pages 32, 33, 44, 45. The rule of all the cases is, that "only easements, apparent and continuous and necessary to the proper enjoyment, pass by implication upon the severance of an estate, one part of which *has served the use of another part.*" The *time* of severance of the two estates must be deemed to be the time of sale and delivery of possession, stated in the bill, as ." on or about March 3d, 1853." They took possession and commenced their works " very soon after the contract for the purchase of the land." Surveyor Haines says, "I commenced to work there April 7th, 1853, employed by Rufus Waterman." *Paine* v. *Miller,* 6 Vesey, 49, note A.; *Broome* v. *Monell,* 10 Vesey, 605; *Daniels* v. *Davison,* 16 Vesey, 253; *Seton* v. *Slade,* 7 Vesey, 265.

IV. The evidence failing to prove the way claimed *to have existed and been used by the owner of the* severed heritage for the benefit of that part of the estate severed prior to the severance, no parol evidence of an agreement concerning such way for the purpose of showing that it passed by the deed, the deed being silent respecting it, is competent or admissable. *Kenyon* v. *Nichols,* 1 R. I. 415, 416. A deed of land, or of any interest in land, must be explained by its own terms as to what passes by it, except as to the condition of the premises at the time of the purchase,—what easements then existed as appurtenant, or had been annexed to or used in connexion with or for the benefit of the premises so conveyed prior to the severance. This rule of law excludes all evidence of any parol agreement concerning this right of way.

V. The evidence failing to prove a right of way as an interest

annexed to the premises conveyed, or a way by license coupled' with an interest, it was not assignable, and was revocable at the pleasure of the defendant.   1. It was not assignable by the Forge and Nut Company to the complainants, and therefore they have no title to maintain this suit.   *Stevens* v. *Stevens*, 11 Met. 251 ; *Frost* v. *N. H. & N. R. R. Co.* 23 Conn. 214 ; 2 Am. Lead. Cas. 757 ; *Carleton* v. *Reddington*, (N. H.) 1 Foster, 291.   2. The parol license being revocable it was revoked by the conveyance of Corliss & Nightingale to the defendants by the deed to them of Sept. 14th, 1857.   *Carter et. al.* v *Harlan*, 6 Md., 20.   3. If not revoked by that conveyance, the right of revocation passed with the conveyance, to the defendants, and they have rightfully revoked the license.   *Stevens* v. *Stevens*, 11 Met. 251 ; *Foot* v. *N. H. & N. R. R. Co.* 23 Conn. 214 ; 2 Am. Lead. Cas. 757.   4. The expense of opening the way confers no equity on the plaintiff's claim, for all the earth removed and much more was required for filling and grading their grounds.

VI.  A decree of specific performance, even where the contract is conclusively established, not being a matter of absolute right but of sound discretion in the court, the court will not make such decree where under all the circumstances it would be inequitable.   2 Story's Eq. Juris. § 769, also § 750.   1. The plaintiffs have no equity for such a decree in this case.   Even admitting it to be proved that the way was essential at the time of the alleged agreement, the evidence shows that it is not now essential.   *Cessante ratione lex cessat.*   2. Such a decree would be inequitable in this case, and a gross wrong to the defendants.

BRAYTON, C. J.   After making an analysis of the bill of complaint, the counsel for the plaintiff desires not to be misunderstood in stating the ground of claim, but states that the plaintiffs' claim to restrain the defendants from interfering with the enjoyment of the way in question, is upon the ground that, at the time of the execution of the deed of May 6, 1853, of the lot of land to the predecessor in title of the plaintiffs, the way in question had been created, was already existing, and being necessary to the enjoyment of the estate conveyed, passed to the grantees as a way appurtenant to that estate.

It is not questioned that a way, or other easement existing, as appurtenant to an estate, passes upon a conveyance of the estate to which it is appurtenant, as incident, and that, though it be not named. It is equally true, that if a way or any other easement is necessary to the enjoyment of the thing granted, it will pass with the estate by implied grant as an appurtenance, but in that case necessity only will carry it. It is not claimed here that this way would pass on the ground of necessity only, and that the way was essential to the enjoyment of the estate granted. It may also be assumed, and all the cases agree, that so long as the estate claimed as dominant and the servient estate are in the same owner, there can be no legal easement, neither portion can be deemed either dominant or servient to any other, but all parts are alike servient to their common owner and lord.

The way here in question is in the argument claimed, not as a way which in part existed, when the estate had before been in different owners, and had by unity of title become extinct, but as one newly created by the disposition of the owner of the two tenements.

In *Kenyon* v. *Nichols*, 1 R. I. 411, and in *Evans* v. *Dana*, 7 R. I. 306, the general doctrine is that, upon the severance of a heritage a grant will be implied of all those continuous and apparent easements which had been, in fact, used by the owner during the unity, though they had then no legal existence as easements. Gale & Whately state the same rule.

The rule requires that the easement, to pass as such by implied grant, must be continuous and apparent. It must be attended with some alteration of the tenements which in its nature is obvious and permanent, sometimes expressed in other words; that the easement must be apparent, the alteration must be such as may be seen, on inspection, to be adapted to the use of the estate to which it is annexed, and to be intended for its use. It must be continuous; this is the term used. This is explained in the books to mean an easement to the enjoyment of which no act of the party is necessary, and the instance given of such is a spout, which is attached, casting the water, whenever it falls, upon the adjoining estate without any act done, and

existing independent of any act of user. So of a watercourse, whether natural or artificial; water pipes, to bring water upon or carry it off the premises.

These are distinguished from the non-continuous, which are such as do require an active interference to every instance of enjoyment; and the example given of such an easement is a way which can be enjoyed only by actual use by the party, as by travelling on it. Both these, the continuous and the non-continuous, may be granted and annexed to the same estate. Upon the unity of title they would both cease to exist as easements. Upon the severance of the estate the continuous would revert and pass by the conveyance, but the non-continuous would not revert or pass but by a new creation. This distinction, and this result, is recognized in the earlier and later cases upon the subject.

It is not sufficient that the way may have been travelled; that it is apparent that it has been travelled; that there is a marked path for travel upon the land. There is said to be an exception, however, in the case of a way, if it may be termed an exception, that in order to the revival it must be one of necessity, not one of mere convenience; and in some cases it is said that it must be such as would have passed as a way of necessity, supposing it never to have been before used or existed as an easement.

It was said by Bayley, J. in *Brown* v. *Rhodes,* 1 C. & M. 438; "If a party means to grant a way which is not essential to the enjoyment of the premises demised, he must use the proper and apt words for that purpose. In this case such a way is not essential to the enjoyment of the premises demised." The question there was, whether a way that had been used passed under the term, "*all ways appertaining and belonging.*" A door opened upon an open space extending from the street, beyond the door, and the occupant of the premises had travelled over this space from the door to the street; but the court held that no way passed by the conveyance.

Blackburn, J., in another case, says : "We do not think, that on a severance of two tenements any right to use a way which

during the entity may have been used and enjoyed in fact, passes to the owner of the assevered tenement, unless there be something in the conveyance to show an intention to create a right to use those ways *de novo.*" We agree to what is said in *Worthington* v. *Gumson*, that in this respect there is a distinction between continuous easements, such as drains, and discontinuous, such as a right of way. In that case a way was in fact necessary to the enjoyment of the estate granted, and there had been a way actually travelled; and the court held that the way of necessity which existed was the one which had been theretofore used and travelled.

In *Lapman* v. *Miles*, 2 N. Y. 508, cited by plaintiffs, this distinction between continuous and non-continuous is also recognized and applied. The continuous are defined to be self per-petuating, independent of human intervention; as the flowing of streams of water, which would pass by a deed as appurtenant. The non-continuous, those which are dependant upon human intervention for their enjoyment; as ways which do not pass unless essential to the enjoyment of the estate conveyed.

In the case of *Phillips* v. *Phillips*, 48 Penn. 178, cited by the plaintiffs, the court, speaking of servitudes which pass by deed, under the term appurtenances, say by all the authorities the rule is confined to cases of servitudes of a permanent nature, notorious, or plainly visible, such as from their character it may be presumed that the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property, and not for mere pleasure. The case before the court was this: there were two estates, farms owned during his lifetime by the father, one of which he himself occupied till his death ; the other, in which the way was claimed to be appurtenant, was during his father's life in the occupancy of his son, for whom he intended it, and to whom he devised it by his will. During the life of the father and the occupancy of the son, a way had been used across the estate occupied by the father, from his son's estate to the highway, a way highly convenient but not of absolute necessity. This way, during this occupancy and during the father's life, had been fenced out and extended from the son's

dwelling to the highway, and so could have been used only to pass to and from that estate, and for the use only of that tenement. It was apparent that it could be used for no other purpose, and yet was intended to be used and was used.

The plaintiffs' case is not brought within any one of these cases by the evidence before us. A way had existed from Charles street, along the front of the building and works of the grantors, northerly, and extending to the gate, opening into the foundry yard, where it terminated. This way had been used down to the time of the contract of sale by the grantors only, and its point of termination was distant from the line of the land conveyed quite a number of feet. Between these points there was an elevation of sand and gravel, which prevented all travel and passing towards the land conveyed, and it extended not only to the grantees' land but some distance beyond the southerly line into it.

After the making of the contract of sale, and before the execution of the deed, the grantees commenced excavating this elevation, and as the earth was removed, it was used in filling their low lands, and, as the witnesses state, the whole of it was neces sary to fill up and grade the land for their works. It was all used for that purpose except the sand found suitable for mortar, which was used in the construction of their works, and some gravel left to the last for grading and hardening the surface. These excavations began immediately after the contract, some to lay the foundations of the buildings, and upon the land conveyed. The excavation was extended from that side toward the grantors' land. This was near the north line of the purchase; but upon land of the grantors, and in a line with the western side of the way before used, a house stands upon this elevation. The excavation was carried on to the west of the house and along by it, but leaving it untouched, and continued to the grantors' land.

There were excavations also on the grantors' land, from the foundry gate where the way terminated, northerly towards the house. Before reaching it the line of excavation turned off in an easterly direction, and was continued, wholly on the land of

the grantors, to the West River road on which the grantees' land bounded wholly on the east. It was level enough for teams to pass through and reach West River street, without coming to the land of the grantees.

This was the first opening through the hill of sand and gravel through which teams or carriages could pass, for the termination of the original way. The opening was made in this direction as one that could be made in the shortest time, and requiring the least amount of labor to make it passable. It was made with a view to enable the grantees to bring through, by that way, the material for their buildings and works. It was desirable to the grantees to get, by this way, into the public highway, upon which their estate fronted, and as their buildings were to front, and then to use the West River street to their lands. It is of some importance, though not controlling, to know when the earliest way became passable, and began to be travelled. It is not that which is now claimed. It is not continued to the grantees' land, nor is it upon the line of the original way produced. The way is claimed as a way directly from the termination of the old way to the grantees' land, without entering West River street. This way into West River street could not have been opened for travel till about the time of the execution of the deed, and was the only way, for a considerable time, and until after the deed was executed. The evidence shows this quite clearly.

S. A. Nightingale says, that " after the contract of sale was completed they proceeded to build the road ; they proceeded at once to excavate, to make their own road ; that the house before mentioned was upon a hill fifteen feet high, and this had to be moved in order to continue the way, because the building would be left twelve or fifteen feet in the air. That building was left several weeks, and they made a passage east of it for our teams. We left that to the latter part of the grading and graded round it. Excavated simply a track that we could draw stone through, say a dozen or fifteen feet wide, leaving half the hill or more till we needed the gravel.

R. Waterman says, " The excavation proceeded immediately

and in haste; that it was necessary to remove the mound of earth to complete the way. The way we opened as soon as we could get it open, because they wanted it for teams to go through," but he cannot state the time when it was opened.

E. J. Nightingale says, " They used the way from April, 1853; began to dig on the west side of the lot, and very soon after dug a narrow way through our land to West River street, so that they coud get their teams passing there; dug this some time in April. This way passes up through our land to West River street alongside the old house; when they got to that point, they were right close to the Forge and Nut Company, up to their land."

Josiah Simmons speaks of this same way up through to West River street, and says he was there the last few days of April; found men at work then, but there was then no passage-way. After he got up to this bank, he could go no further with his horse. He himself commenced work early in May, not more than a week or ten days after the former visit there; considerable advance along next the foundry building at first visit.

John Ash says, "First commenced cutting down the hill somewhere about middle of April, but not till after he procured his tools for that purpose." This was shown by another witness to have been April 21st. "It was several days after I got the tools;" that it was about three weeks when he got through the hill, so that they could drive through the turnout; after that the way was open for teams, market wagons, and every thing. It was about three weeks before he could drive a tip-cart through from the foundry gate to this land, before he could see day-light as he said, through into Corliss & Nightingale's yard. He could drive round the hill, but could not do anything till he made a pass-way through this hill, and that took about three weeks.

W. S. Haines speaks of the same way, and says he recollects distinctly an excavation on the east side of the house, and within about twenty feet of it, and that there was no difficulty in getting round between the machine shop and the pattern shop through to West River street before twelfth of April, when he made the surveys. He speaks of no other way except into West River street.

The deed was executed on the sixth day of May, 1853. At that time, by the testimony, the only way which could be travelled, instead of connecting with the estate conveyed by the deed, passed up entirely on land of the grantors to West River street, on which the estate conveyed fronted, and the grantees passed and transported their material, partly by this way and partly by West River street, to their premises. It had not been used for twenty years under claim of right so as to create a title by user.

There is no case referred to, and none on the books, which hold that a way not connected with another, but absolutely disconnected at the time of the grant, has been held to pass by the term appurtenance. The second point in the plaintiff's brief as stated,—the act of Corliss & Nightingale, accompanied by their declarations, together with the fact that they and the grantees actually opened the way to the premises sold,—amount to a declaration that the way is for the use of the premises granted, and so establish it as an appurtenance and so pass by the after conveyance of the land.

It may be sufficient to say upon this point, that the way had not been opened, at the time this deed was executed, to the complainants' land ; that any declaration of any intent that it should be, or that it should be made appurtenant to the estate, are not evidence to pass an interest in any estate, nor can any act of theirs, short of their deed, pass any such interest.

The doctrine of dedication to public uses, which the plaintiffs seek to apply to this case, furnishes no support to it. It may be that a public way may be proved, in some cases, by the same kind of evidence as would prove a private way. Twenty years' use may establish either. But that in all cases the same rule can be applied is not maintainable. And no case has been suggested where a private way has been established, by an act of the owner of the estate, however unequivocal, and a use for any length of time short of twenty years, other than the ways of which we have been speaking, which are under the conditions before stated.

A public way may be given to the public without deed,

because by deed it cannot be vested in them, but an individual right must be by deed.

The plaintiffs' further point is, that the defendants are estopped to deny the existence of this way because they had agreed that the grantees should enjoy such a way; that no consideration had been paid for it, and that the grantees have entered into the land and way, and expended large sums of money upon the faith of the agreement for the way.

There is nothing in the facts for this to rest upon. There has been no expenditure which would not have been made without such agreement, and must necessarily have been made in the construction of their own works. Their agreement was by parol, if any, and was merged in the deed.

*Bill dismissed with costs.*