# NEWPORT  COUNTY.

Geoege P. Wetmore *vs.* Josiah M. Fiske.
Josiah M. Fiske *vs.* Geoege P. Wetmore.

A cross-bill in equity charging facts not alleged in the original bill, relating to the same subject and praying for affirmative relief, does not fail when the original bill is discontinued, but may be prosecuted as if itself an original bill.

In legal definition, the word "drainage" may include sewage ; but when "drainage" is used in reference to lands, and a drain for water exists, and there is no provision for house sewage, the inclusion is not necessarily implied.

Hence, when a loose stone drain was laid in a private street, following the course of an old water-way, and an agreement was made by the land-owners giving mutual rights of way through streets opened as private ways through their respective lands, "together with the right of drainage in and through the same," —

*Held*, that this did not give the right to pour house sewage into the stone drain, whence it must flow over or under land of one of the agreeing parties.

A., under a claim of right, had for more than twenty years maintained drains for the use of his land through L. Avenue, a private way belonging to B., and this with the knowledge of B. when A. received from B. a deed of realty bounded on L. Avenue.   This deed contained, after the description of the realty conveyed, a clause, "It is distinctly understood by and between the parties hereto, that there shall be no right of frontage on, or access to, the said L. Avenue for any land of this grantee, except for the parcel hereby conveyed." After receiving the deed, A. continued his drains as before through L. Avenue.

*Held*, that the clause did not affect A.'s right of drainage fully acquired by twenty years' adverse use before he took the deed.

*Held*, further, that the clause was to construe or explain the description in the deed, not to serve as a contract or release affecting rights already acquired.

BILL IN EQUITY and CROSS-BILL, both asking for injunctions. *July* 17, 1886. STINESS, J. A private way, called Lawrence Avenue, belonging to the estate of the late William B. Lawrence, extends along the easterly line of the complainant's estate. Very nearly in the line of this avenue, the water drained from land in the vicinity was accustomed to flow in a natural watercourse, or open ditch, along the entire length of the avenue and across the land of Lawrence, now owned by the respondent, into the sea. About thirty years ago, a drain, following the same general line, was constructed by Lawrence, to take the water underground. This drain consisted simply of a ditch about two and a half feet deep, with loose stones upon the sides and a stone-covered top. The · complainant had no title to any part of Lawrence Avenue until August, 1872, when he purchased a lot of Lawrence, adjoining the westerly side of said avenue; but he claims that for more than twenty years prior to that time the drainage of his premises had flowed into the drain, as it had naturally flowed into the watercourse before it was changed by Lawrence. In August, 1881, the complainant, " desirous to further assure his title to the privilege of draining his said premises through the stone drain aforesaid," entered into an agreement, with mutual grants, with two of the trustees of the estate of said Lawrence, by which, he alleges, he obtained an express grant of a right of drainage appurtenant to his entire estate, through said Lawrence Avenue, and, " by necessary implication," across the land then owned by the trustees, and subsequently purchased by the respondent. In 1883, having built a new stable, which contained also a tenement for servants, the complainant relaid his drain-pipes, abandoning the outlets previously used, and connecting all, through the stable, with the drain in Lawrence Avenue. In 1885, the respondent, coming upon the drain while excavating upon his lot, and finding that it emitted offensive odors, cut off the drain on his premises and placed a dam across it; whereupon the complainant brought this bill to enjoin him from stopping the flow of water in the drain.

Pursuant to our statute, Pub. Stat. R. I. cap. 192, § 16, the respondent set up in his answer, by way of cross-bill, that the complainant was wrongfully disposing of sewage through his drain, and prayed that he might be restrained from so doing. The complainant filed a replication to the answer, and an answer to the cross-bill; the respondent filed his replication to the answer to the cross-bill; testimony was taken, and the cause set down for hearing. The complainant then filed a discontinuance of his bill, and claimed that, under it, the cross-bill must also be dismissed as a mere dependency upon the original bill. This does not necessarily follow. " Whether the dismissal of the original bill carries with it the cross-bill depends on the character of the latter. If the cross-bill sets up matters purely defensive to the original bill, and prays for no affirmative relief, the dismissal of the latter necessarily disposes of the former. But where the cross-bill sets up, as it may, additional facts not alleged in the original bill, relating to the subject-matter, and prays for affirmative relief against the plaintiffs in the original bill in the case thus made, the dismissal of the original bill does not dispose of the cross-bill, but it remains for disposition in the same manner as if it had been filed as an original bill." *Lowenstein* v. *Glidewell*, 5 Dill. 325, 329 ; *Dewers* v. *Dewers*, 55 Miss. 315; *Jones, Dumright & Co.* v. *Thacker & Co.* 61 Ga. 329; *Worrell* v. *Wade*, 17 Iowa, 96 ; *Ragland* v. *Broadnax*, 29 Gratt. 401, 419 ; and *West Va. O. & O. L. Co.* v. *Vinal*, 14 W. Va. 637, where this subject is elaborately discussed.

But the complainant contends that the respondent's bill is not a cross-bill, inasmuch as it introduces new subjects of litigation, distinct from those in controversy in the original suit. We do not think that the objection is well taken. The cross-bill pertains only to the subject-matter of the original bill, viz., the use of the drain. By way of defence to the stoppage of the drain, the respondent in the original bill sets up that the water comes down mingled with sewage, which the complainant has no right to discharge upon or through his land, and from such wrongful discharge he prays that the complainant be restrained. We do not see how any matters of original and cross-bill could be more closely connected. Indeed, they are identical. If the respondent can maintain his right to stop the discharge of sewage upon or through his

premises, his right to restrain a further discharge must follow as an almost necessary consequence. The matter of the cross-bill, therefore, is not new nor distinct. In *Atlanta Mills* v. *Mason*, 120 Mass. 244, a bill was filed by an owner of a mill against a lower owner on the same stream, to restrain him from maintaining his dam at a greater height than he was entitled to. The defendant filed a cross-bill, alleging grievances in the use of the stream by the plaintiff, and the court held that, as it related to the same subject-matter, the respective rights in the use of the stream, it could be maintained, upon the principle that a plaintiff seeking equity should be prepared to do equity. We think that Fiske is entitled to proceed with his cross-bill notwithstanding the discontinuance of the original bill.

Upon the cross-bill the question arises whether Wetmore, the respondent therein, has the right to discharge sewage from his tenement through the drain across the land of Fiske. Considerable testimony has been offered to show that he had acquired a prescriptive right to use the drain, but it is not necessary to decide that question upon this bill, inasmuch as the bill prays only for an injunction to restrain the discharge of sewage from the tenement over the stable. No prescriptive right can be claimed for this, since the stable and tenement have been recently constructed, and a right gained by prescription cannot be enlarged or extended beyond the prescriptive use. *Cotton* v. *Pocasset Manuf. Co.* 13 Met. 429.

The right to discharge the sewage of the tenement into the drain, and so through the complainant's land, must be found, if at all, in the agreement of August, 1881. In this agreement, signed by those representing the Wetmore estate and by two of the trustees of the Lawrence estate, after mutual exchanges of rights of way through avenues opened and extended through the respective estates, and provisions that these shall be private ways for the owners of said estate, is the following clause: " *together with the right of drainage in and through the same,* by said parties and signers hereof, and their heirs, successors, and assigns respectively, forever, as appurtenant to all and singular their respective lands." Several questions are raised by the complainant as to the validity

and effect of this agreement, only one of which needs to be considered, viz.: Does the agreement, under the term "right of drainage," give to Wetmore, "by necessary implication," the right to turn sewage into the drain and across other land then owned by the Lawrence estate? ·We do not think it does. The agreement, by its terms, extends as far as Ruggles Avenue on the south, on which the land of Fiske abuts. At the time of its execution, a plan for public sewers, one of which was to be laid through Ruggles Avenue, was under consideration by the city council of Newport. It is significant that no mention is made of the drain then existing in Lawrence Avenue, but, on the contrary, the right of drainage is given to all the parties, through all the avenues, including those in which there were no drains. We think the agreement could not have been intended to include, as it does not in terms include, a right to send sewage from all the land comprised in the agreement, covering many acres, through the Lawrence Avenue drain to Ruggles Avenue, there to be disposed of by the owners of the Lawrence estate. The drain evidently was not constructed for, nor is it suitable to, such a service. If the respondent has the right, by the agreement, to discharge the sewage of one tenement, recently erected, with the further right of easement in the complainant's land for its disposition, he could erect many houses upon the many lots into which his estate can be divided, and all would have the same right; the result of which would be the creation of an intolerable nuisance. The possibility of such a result affords a strong presumption that it could not have been intended by the parties, and the improbability that the present owners of the land would use it to so great an extent does not raise a presumption that, for that reason, the owners of the Lawrence estate meant to subject their land to such a perpetual burden. The right of drainage granted in the agreement, so far as it relates to the Lawrence Avenue drain, must have been intended to cover the ordinary drainage of the land, as it had been accustomed to flow through the avenue, first in the watercourse, afterwards in the drain; together with the right, by a proper drain, to connect with the common sewer, when it should be built. This seems to be the most natural and reasonable meaning of the terms of the grant. While there has been no judicial con-

struction of the words " drainage " and " sewerage," and in many cases they may be and are synonymous, yet, as they are used nowadays, they suggest to the mind a difference. Formerly the word " sewer " was used for " a fresh-water trench, compassed in on both sides with a bank ; a small current or little river." Callis on Sewers, *80. So the statute 25 Henry VIII. cap. 5, " concerning Commissions of Sewers," was to remedy damage from the " flowing surges and course of the sea in and upon marsh grounds ; " also land waters and springs upon meadows, and other watercourses. More recently, however, and probably from the appropriation of the word, in acts and ordinances, to the common conduits of liquid filth, it is usually associated with such a use. Thus Webster defines "sewers ": " A drain or passage to convey off water and filth underground." For " drain " he gives : " A watercourse ; a sewer." Kent speaks of the right of drainage, 3 Comment. *436, as a " right to convey water in pipes through or over the estate of another." In *Goldthwait* v. *Inhabitants of East Bridgewater*, 5 Gray, 61, 64, the court says : " The words ' ditch ' and ' drain ' have no technical or exact meaning. They both may mean a hollow space in the ground, natural or artificial, where water is collected or passes off." So in *The Queen* v. *Godmanchester Local Board of Health*, 5 B. & S. 886, a distinction is made between a drain and a sewer, but the distinction is based upon a statute.

While we cannot say, as a matter of legal definition, that sewerage may not in some cases, be included in drainage, yet, when the simple term " drainage " is used as appurtenant to lands, the most obvious suggestion is a drainage of water ; and when, in addition, we find that a drain for water exists, and that no suitable provision is made for sewerage from houses which, if included, might result in a nuisance, we cannot think that an agreement for drainage, which did not include house drainage in its terms, could have been intended to cover it by necessary implication. A sufficient reason for the agreement in this case is found in the contemplated building of a sewer in Ruggles Avenue, with the right to take to it such drainage as the parties might properly take through the several avenues named.

We therefore conclude that the respondent has no easement in the complainant's land for the discharge of sewerage from his

tenement, through the drain in Lawrence Avenue, and that the complainant is entitled to relief as prayed.

*William P. Sheffield & Francis B.. Peckham*, for Wetmore.

*Samuel R. Honey*, for Fiske.

After the foregoing opinion had been given, Wetmore, the respondent to the cross-bill *Fiske* v. *Wetmore*, filed a petition for a rehearing.

*Newport, March* 28, 1887. DURFEE, C. J. The respondent asks us to grant him a rehearing for several reasons, one of which is that we were influenced in coming to our former conclusion by certain errors of fact. These errors are stated to be, *first*, that a plan of sewerage, providing for a sewer in Ruggles Avenue, was before the city council of Newport when the indenture granting rights of drainage in and through Lawrence Avenue was executed; *second*, that the Lawrence Avenue drain had not previously been used for house and stable drainage; and, *third*, that said drain is unsuitable for such drainage. The respondent submits affidavits to prove that when the indenture was executed the plan was not before the city council, having been rejected, after adoption by the Common Council, by the non-concurring vote of the Board of Aldermen; that he had used the Lawrence Avenue drain for several years for house and stable drainage, and that such drains were in common use in Newport for such drainage. Some of the reasons given for our former opinions would be weakened by the proof if admitted; but. would it lead us to a different conclusion?

What we formerly decided was, that the respondent is not entitled, either by prescription or under the indenture, to a right to conduct the sewage of his new stable and tenement through the Lawrence Avenue drain, across Ruggles Avenue and the complainant's land, to the sea. The indenture grants "the right of drainage in and through " three private ways or avenues belonging to the grantors, Lawrence Avenue being one. Lawrence Avenue ends at Ruggles Avenue, and therefore the grant, according to its terms, extends no further. The respondent contends that it extends to the sea by implication, inasmuch as the land, now of the defendant, belonged to the grantors at the date of the grant. He argues

that this must have been contemplated by the parties, since other-wise the grantees would take nothing by the grant, a right ending at Ruggles Avenue being unavailable. .It was in view of this argument that we formerly referred to the plan of sewerage which we then.supposed was before the city council. The rejection of the plan lessens the pertinency of the reference, but it does not convince us that the respondent would attach no value to the right unless it extended to the sea, since the adoption of some system of sewerage is probably only a question of time. Moreover, the indenture grants other rights and privileges, and therefore the grant of the right of drainage in addition might be accepted, however small its value.

The respondent, citing many cases, contends that an extension of the right to the sea must be implied as a matter of law. We have examined the cases, and find that they go only to the effect that the grant of an estate or easement carries with it by implication whatever incidental right is necessary to its beneficial enjoyment, provided the grantor has power to bestow it. Thus the grant of a right of way implies a right to make or mend the way. So the grant of a right of turbary implies a right not only to cut the turfs, but also to stack them for removal. Such implications do not add to the extent of the grant as expressed: they simply make it serviceable within the limits expressed. Cases which hold that the conveyance of a house may carry the site and curtilage are not in point, for they hold that the site and curtilage pass, not incidentally to the house, but as parcel of it, within the meaning of the word "house" as used. A right of drainage from Lawrence Avenue to the sea cannot be construed to pass as parcel of a right of drainage "in and through" Lawrence Avenue. The case among the cited cases which comes nearest to supporting the complainant's claim is *Bushwell* v. *Proprietors of Ore Bed,* 31 Conn. 150. There the plaintiff conveyed to the defendants a right to wash ore in a stream, and discharge the dirt on his meadow lot. The exercise of the right resulted in. an accumulation of dirt on the meadow lot which washed down upon the plaintiff's adjoining pasture lot, and the court held that no action would lie for the injury, the same being a natural consequence of the exercise of the right as granted. The case is authority to the effect, not that the

grant of the right of drainage in and through Lawrence Avenue implies a right in continuation thereof across the complainant's land to the sea, but only that the respondent would not be liable for any injury resulting to the land of his grantors, or of the complainant as their successor in title, for exercising his right as granted ; *i. e.* in and through Lawrence Avenue.

The respondent contends that he has a right to transmit his house and stable drainage through the drain to the sea, because the drain is a substitute for a natural watercourse which formerly followed the same direction.   If the drain be such substitute, we suppose the respondent may have a right to use it as if it were the watercourse ; but he would have no right, except by prescription, to use the watercourse for the carriage of his house and stable drainage or sewage to the sea, since such use would unlawfully contaminate and defile the water running in it.   There is no satisfactory proof of prescription; on the contrary, it is in evidence that years after the drain was constructed the water running in it was pure enough to be drunk by both cattle and men.

The respondent contends that he is entitled to the use of the drain from Lawrence Avenue to the sea, under the law in regard to apparent and continuous easements.   The law referred to is this : When the owner of land subjects one part of it to accommodations, resembling continuous easements, for the benefit of the other, such accommodations, by conveyance of the servient part, will really become continuous easements for the benefit of the other part.   *Providence Tool Company* v. *Corliss Steam Engine Company*, 9 R. I. 564.   It may be that under this rule the complainant's land is subject to the drain for the benefit of Lawrence Avenue, since the drain was there when the land was conveyed to his predecessor in title by the owners of that avenue ; but we do not see how it is subject thereto for the benefit of the respondent's land, except in so far as the drain is a substitute for the ancient watercourse.   It is true the respondent was using the drain when the land was conveyed ; but, in so far as he was using it independently of the indenture, the use was either permissive or by way of substitution for the watercourse, and, in so far as he was using it under the indenture, his right did not extend beyond Lawrence Avenue.   It will be observed that the right

granted by the indenture is not in terms a right to use the existing drain, but only a right of drainage in and through the avenues mentioned; and, even if the grant covers house and stable drainage or sewage, it does not follow that the grantees are entitled to use the existing drain, which was laid for other purposes, as a conduit for such drainage or sewage. We have no doubt that the trustees of the Lawrence estate, as owners of the land below Lawrence Avenue, could have refused to permit such use even after the indenture, because such use would send the drainage or sewage through the continuation of the drain upon their land below the avenues in excess of the grant; and if the trustees, as owners of the land below the avenues, were entitled to stop such use, or to have it stopped, we think the complainant, as their successor in the title, is likewise entitled to have it stopped.

The respondent contends that to construe the grant so is to construe it contrary to the intention of the parties. In proof of this he introduces the deposition of one of the two trustees who signed the indenture. We do not think oral testimony is admissible to show the intention of the parties to a written instrument under seal. The deposition, however, scarcely goes to the extent of the respondent's claim, for the deponent, while disavowing any intention to limit the grant to land or surface drainage, in answer to the question, How was it understood that the drainage should be carried off after it was conducted to Ruggles Avenue? replied: "I don't think there was any understanding about it; my idea was that the drain would find a natural outlet as formerly," unless a sewer was laid in Ruggles Avenue. We cannot help thinking that if the trustees had really intended to charge their land from the foot of Lawrence Avenue to the sea with such a servitude as is claimed, they would have had an understanding about it, and would have expressed, and been required to express, it in plain words.                                    *Petition dismissed.*

The complainant Fiske then amended his bill as stated in the following opinion, and set the case down for hearing on the amended bill and answer thereto filed by the respondent Wetmore.

*Samuel R. Honey*, for complainant.

All claim of prescription is precluded by Wetmore's acceptance from William B. Lawrence of a deed conveying a parcel of land on Lawrence Avenue, and containing the following clause : —

" It is distinctly understood by and between the parties hereto, that there shall be no right of frontage on, or access to, the said Lawrence Avenue, for any land of this grantee, except for the parcel hereby conveyed."

At the time Wetmore accepted this deed, the situation, according to his own version, was as follows : —

He had in 1852 commenced to use the land now called Lawrence Avenue for drainage purposes of some sort, connected with his land referred to in the above clause, and, giving him the benefit of all he can claim for such use, it was of a character which, if continued for twenty years, would give him a prescriptive easement in Lawrence Avenue. Lawrence Avenue was created a way — not a public highway — appurtenant to the land conveyed to Wetmore by this deed, and had no existence prior to its date.

It is submitted that the clause was inserted expressly to cut off the possibility of any such claim being made as that which is presented now.

It could not apply to anything else, for certainly there was not then, and is not now, any pretence that Wetmore's other land had any other right vested or inchoate in Lawrence Avenue.

In *Simonds* v. *Wellington,* 10 Cush. 313, 316, the court says : " A deed - poll, though executed by one party only, must be regarded as the mutual contract of the parties, the one granting and the other accepting the grant, with whatever conditions or reservations ; both are supposed to understand the terms of it, and are bound by them. But, in ascertaining the intent of the parties to such contract, it must be construed according to the subject-matter, and all the circumstances affecting them, which circumstances are supposed to be understood by both parties."

Speaking of a similar clause in a deed, Mr. Justice Sutherland, in delivering the opinion of the Supreme Court of New York in *Case* v. *Haight,* 3 Wend. 632, 635, says : " The reservation can have no effect as an exception. . . . But, though void as an exception, the reservation is binding on the grantees and their

assigns, and becomes operative either as an implied covenant or by way of estoppel."

In *Atlantic Dock Company* v. *Leavitt et al.* 54 N. Y. 35, it was decided, —

1. That the grantee in a deed-poll, by the act of accepting the deed, is estopped from denying his covenants contained therein, even though he had not signed or sealed it.

2. That equity will restrain a grantee, or those claiming under him, from doing that which he has agreed not to do, in favor of the grantor *and his assigns or representatives.*

In *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285, 297, the point was made that there can be no covenant running with the land, where no land, but only an incorporeal hereditament, is granted. But the court said : " But this is not an action on the covenant. The defendants had the right to put such restrictions and limitations upon their own estate, in favor of adjoining estates, in granting this right of way, as they chose. And courts of equity, in determining the rights of the parties, will ascertain the intention by all the provisions and stipulations made. Between the original parties only, the agreements and stipulations may be enforced at law.

" But in equity *those claiming title under them* may resort to the whole instrument, including the covenants and agreements in gross, for the purpose of ascertaining the nature of the right intended to be conveyed; and, when ascertained, the court will enforce in favor of such persons that use or mode of enjoyment which the grantor has seen fit to impress upon it. The effect of a grant will thus be given to that which is in the form of an agreement, binding at law only between the original parties." And see *Whitney* v. *Union Railway Co.* 11 Gray, 359, 364; *Parker et al.* v. *Nightingale et al.* 6 Allen, 341, 344; *Finley* v. *Simpson,* 22 N. J. L. 311; *Spaulding* v. *Hallenback,* 35 N. Y. 204; *Kellogg* v. *Robinson,* 6 Vt. 276; *Burbank* v. *Pillsbury,* 48 N. H. 475; *Newell* v. *Hill,* 2 Met. 180; *Providence Christian Union* v. *Eliott,* 13 R. I. 74.

In *Newell* v. *Hill,* 2 Met. 180, which was the case of a deed-poll, in the body of which was the following stipulation : "The said Josiah Hill, his heirs and assigns, to build and maintain a

good and sufficient fence the whole extent of the line bounding on the grantor's land," the court held the stipulation binding on the grantee by his acceptance of the deed, though he had not signed it, and says, "It is a valid contract on his part, by which a right may be reserved or granted, or on which a suit may be maintained."

And in *Dyer* v. *Sanford*, 9 Met. 395, 405, Chief Justice Shaw says: "We have no doubt that by apt words, even in a deed-poll, a grantor may *acquire some right in the estate of the grantee.* It is not, however, strictly by way of reservation, but by way of condition or implied covenant." And, after giving an illustration, proceeds: "In effect, this, if accepted, would secure to the grantor a right in the grantee's land; but we think it would enure by way of implied grant or covenant, and not strictly as a reservation. It results from the plain terms of the contract."

We trust it will not be claimed before a court of equity that Wetmore can evade the obligation of this contract by connecting his other lands with the drain in question through the land granted in the deed. Neither would such a claim be good in law. *Davenport* v. *Lamson*, 21 Pick. 72.

*William P. Sheffield*, for respondent.

*Providence, July* 30, 1887. PER CURIAM. Since the delivery of our opinion in March last, the complainant Fiske has amended his cross-bill, setting forth in the amendment that, in February, March, and April, 1882, the defendant Wetmore constructed seven drains, besides the drain before complained of, connecting other parts of his estate with the Lawrence Avenue drain, and discharging through them into the Lawrence Avenue drain, and thence by means thereof upon the complainant's land, sewerage, ordinary ground-water, stable-water, and the overflow from cisterns, and praying that the defendant may be enjoined from so doing. The defendant in his answer sets up a right to do so, acquired by adverse use continuously enjoyed since about 1851, with the knowledge on the part of William Beach Lawrence, the owner of Lawrence Avenue and of the land now belonging to the complainant, until his death in 1882, that such use was with claim of right. The complainant set the cause down for hearing on the amended bill and answer, and at the hearing contended that the

defendant was precluded or estopped from making the defence as stated, by reason of a deed to him from said Lawrence, bearing date August 12, 1872, conveying to him a lot of land adjoining his estate on Lawrence Avenue. The deed, in so far as we need recite it for the purposes of this case, is as follows, to wit: —

"Know all men by these presents: That I, William Beach Lawrence, of the city of Newport, in the State of Rhode Island, in consideration of twelve thousand four hundred and five $\frac{30}{100}$ dollars paid by George P. Wetmore, of said Newport, the receipt whereof is hereby acknowledged, do hereby give, grant, bargain, sell, and convey unto the said George P. Wetmore all that certain tract or parcel of land situate in said city of Newport, and bounded as follows, viz.: Northerly, on Le Roy Avenue; easterly, on Lawrence Avenue (which is to be forty feet in width, and to extend from Le Roy Avenue on the north to Ruggles Avenue on the south); and southerly and westerly by lands of this grantee. For a more full and particular description of the parcel of land hereby conveyed, reference may be had to the plat thereof hereto annexed. It is distinctly understood by and between the parties hereto that there shall be no right of frontage on, or access to, the said Lawrence Avenue for any land of this grantee, except for the parcel hereby conveyed. To have and to hold the above-granted premises, with all the privileges and appurtenances to the same belonging, to the said George P. Wetmore, his heirs and assigns, to his and their use and behoof forever."

The complainant insists that the clause, "It is distinctly understood," etc., amounts, by reason of the defendant's acceptance of the deed, to an implied covenant or agreement on his part that "there shall be no right of frontage on, or access to, Lawrence Avenue" for his other land, and that in equity he will be held accordingly not to have any right of frontage on, or access to, Lawrence Avenue for his other land, and consequently no right to maintain the drains complained of, the same being drains which lead from his other land into the middle of the avenue, to connect there with the Lawrence Avenue drain.

According to the answer, which is to be taken as true, the rights in dispute, if "knowledge" be equivalent to "express notice," which is not questioned, had been fully acquired, by

twenty years' adverse use, when the deed of 1872 was executed;
and therefore to give the clause in question the effect which the
plaintiff claims for it, is to give it the effect of a quitclaim or
release of an existing easement appurtenant to the defendant's
other land.    The question is, whether the clause ought to be con-
strued so as to give it that effect.

The clause occurs in the part of the deed which is devoted to
the description of the premises conveyed, and it is proper, there-
fore, to regard it as intended to be a part of the description, or as
added thereto for the purpose of defining with greater precision
the scope of the grant, if it can reasonably be so regarded, instead
of as a clause intended to be operative outside of the grant, by
way of release from the grantee.    The language of the clause is
not language of contract or agreement, but language of construc-
tion or explanation, as if the grantor were saying to his grantee,
by way of precautionary observation, " I convey to you this lot
bounding on Lawrence Avenue, and you thereby will become en-
titled to rights of frontage on, and of access to, that avenue as
appurtenant to the lot; but, remember, it is distinctly understood
between us that there shall be no such right for the rest of your
land."    Such a remark could not be reasonably understood to im-
port a surrender by the grantee of any right which he had previ-
ously acquired for his other land, but only as intended to guard
against the possibility of his claiming any right for his other land
as a result of the conveyance.    It seems to us that there is little
reason to doubt that this is what was meant by the clause.

It probably occurred to the grantor that the grantee might sup-
pose that, if he had access to Lawrence Avenue from the lot con-
veyed, he would only have to go from his other land over the lot
conveyed in order to have the right virtually for his other land,
and so he inserted the clause to prevent the supposition; or he
may have feared that a conveyance of the lot bounding it on
Lawrence Avenue might be taken as a recognition of the avenue
as a street, and that thus the grantee would claim to be entitled
to rights of frontage and access, and inserted the clause as a safe-
guard.    If the clause had been intended to operate as a surrender
of any right on the part of the grantee, it would naturally have
contained a statement that it was in part consideration of the con-

veyance. But the conveyance purports to have been made wholly for other considerations. Indeed, it is highly improbable that, if the surrender of so valuable a right as that of drainage through Lawrence Avenue had been intended, language more apt for that purpose would not have been employed. Can such a right be properly denominated a right of frontage or a right of access? If it can be, it does not seem to us that it would ever be likely to be so denominated. We think, therefore, that the only reasonable construction of the clause is to confine it to the subject-matter of the conveyance, and to construe the clause as if it read, "There shall be no right of frontage on, or access to, the said Lawrence Avenue for any land of this grantee, except for the parcel hereby conveyed, *by virtue of this deed*."

We will add that it increases our confidence in the correctness of this construction, that it is the construction which has practically been put upon the clause by the parties themselves; for it appears by the answer that the defendant continued to use the drain connecting his estate with the Lawrence Avenue drain without interruption, after the deed, in the same manner as before, and with the knowledge on the part of the grantor that he was so using it under a claim of right. It is incredible that this would have been allowed if the purpose, or any part of the purpose, of the clause had been to take from the defendant the right to such use.                    *Injunction denied.*