ISADOR DORMAN, PLAINTIFF-APPELLEE, v. USBE BUILD-ING AND LOAN ASSOCIATION, DEFENDANT-APPEL-LANT.

Argued May 8, 1935—Decided July 25, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *Schotland & Schotland.*

For the appellee, *Fast & Fast.*

The opinion of the court was delivered by

PERSKIE, J.   Does a judge of a District Court, who has ordered the entry of a judgment in favor of the defendant, in a cause tried before him, thereafter, on plaintiff's rule to show cause, have the power to change that judgment by entering without a retrial, a judgment (as here of $250) in favor of the plaintiff on the ground that he (judge) had erroneously decided the case in the first instance?

The facts out of which this question arises are these: Plaintiff was a tenant of the defendant, who owned a building situate at the southeast corner of Sixth street and Third avenue, Newark, New Jersey.   This building is one story high and houses five stores under one common roof controlled by defendant.   The plaintiff occupied the corner store, storage room and part of the cellar of the building and kept quantities of reserve stock (grocery supplies) in the cellar and stock room.   On July 28th, 1933, plaintiff sued defendant, in tort, for alleged losses sustained by him, in May, 1929 (first count) and in December, 1929 (second count), as a result of rain seeping from this leaky common roof and damaging his stock.   The case was tried on the theory that it was defendant's duty to keep this common roof in good condition, *i. e.,* free from leaks; that the defendant failed after due notice thereof and within a reasonable time thereafter to repair it and thus breached its duty in the premises.   *Buda* v. *Dzuretzko,* 87 *N. J. L.* 34; *Perry* v. *Levy, Ibid.* 670. Defendant, conceding its obligation to repair the roof, offered proof tending to indicate that it had fully discharged it.

The trial judge, sitting without a jury, was not impressed with plaintiff's proofs.   In deciding the case, in the first instance, he pointed out that it was a "scrambled sort of thing;" that plaintiff waited "four years before starting

suit;" that referring to letters concerning the notice, he said, "I really can't pay very much attention to them. I don't think he [president of building and loan association] ever received them;" that there was "an awful lot of manufacturing in the testimony." He was, however, of the opinion that defendant was under the obligation to keep the roof in repair; that defendant's president was called concerning these leaks and that he sent up, as soon as possible, a man to make them. And although the trial judge was of the further impression that the plaintiff had suffered damage yet he concluded that the defendant was not responsible to the plaintiff; "they [defendant] did all they could." Accordingly the judge directed the entry of a judgment for the defendant. This judgment is based on the first count; no one questions the judgment of no cause of action in favor of the defendant as to the second count.

Thereafter plaintiff obtained a rule to show cause why the judgment entered, "should not be set aside and judgment entered for the plaintiff, or in the alternative, why a new trial should not be granted, or such other relief as shall be equitable and just." The basis for the ruling being (paragraph 7 of the affidavit of Moskovitz) that "* * * the judgment heretofore rendered was contrary to the weight of evidence and judgment should have been given for the plaintiff; further that there was no evidence or insufficient evidence for a finding in behalf of the defendant and that the court did commit other and various errors in the cause."

In disposing of the rule to show cause the trial judge, *inter alia*, said:

"At the close of the trial I rendered judgment for the defendant *and I now say that my verdict at that time was erroneous*, and I now hold that it was the duty of the defendant company to see that its *roof was in good condition and free from leaks*, and that when they received notice from time to time it was their duty to make repairs within a reasonable time, that they did not do this and plaintiff was injured.

"I feel that although there was some doubt as to the precise time of the damages, and that notwithstanding, they showed

that during or about the month of May, 1929, damage was caused to plaintiff's property in the amount of two hundred fifty ($250) dollars."

A judgment of $250 was thereafter entered in favor of the plaintiff and against the defendant.

The effect of the disposition of the rule, as aforesaid, is not questioned. *Robins* v. *Mack International Motor Truck Corp.,* 113 *N. J. L.* 377; 174 *Atl. Rep.* 551. We are met, *in limine,* with the question first stated and requiring decision in this matter. We think that it must be answered in the negative.

It is, of course, settled that judgments under the control of the court which pronounced them, during the term at which they are rendered or entered of record, may be set aside, vacated, modified or annulled by that court. *Bell* v. *Kelly and Kelly,* 17 *N. J. L.* 270; *Fraley* v. *Feather,* 46 *Id.* 429; *In re Hartshorn,* 94 *N. J. Eq.* 371, 375; 97 *Atl. Rep.* 262. And in 34 *C. J.* 207, § 436, the law is stated so: "A court has full control over its orders and judgments during the term which they are made, and may upon sufficient cause shown, in the exercise of its sound discretion, amend, correct, reverse, supplement, open or vacate such judgments. This was the rule at common law and it prevails in almost all jurisdictions." See, also, 15 *R. C. L.* 688.

It shall suffice if we but cite a few more of the many times that our courts have applied these sound principles of law. Thus we have held that a void judgment may be vacated at any time (*Westfield Trust Co.* v. *Cherry,* 115 *N. J. L.* 86; 178 *Atl. Rep.* 546); that "courts have control over their own judgments. After appeal has been taken, a court may still amend its judgment where the amendment is formal only. 23 *Cyc.* 862; *Fraley* v. *Feather, supra;* 15 *R. C. L.* 681, § 132; *Kindel* v. *Beck & Lith. Co.,* 24 *L. R. A.* 311." *Bohny* v. *Associated Dyeing and Printing Corp.,* 12 *N. J. Mis. R.* 259; 171 *Atl. Rep.* 133, 134. And "a court may correct an error in the records and proceed with a trial upon the record thus corrected." *State* v. *Russakow,* 7 *N. J. Mis. R.* 195.

The District Court is a continuous court of record. Section 3 of the District Court act, 2 *Comp. Stat.* 1709-1910, *p*. 1954. And a judge of that court does have the power, under section 17 of the act, to order a new trial if application therefor, except as to newly discovered evidence, is made within thirty days after judgment. *Steinhauser* v. *Friedman,* 12 *N. J. Mis. R.* 167. In construing this section (17) we have held, in dealing with a matter for a new trial, on excessive damages, that the trial judge, under the act, has the same power as a court of common law in putting plaintiff to an election of accepting a reduced verdict or a new trial. *Dunning* v. *Reid,* 76 *N. J. L.* 384.

But indispensable as the application of the powers of a court to control its own judgments may be, to the effective administration of justice, they are not without their limitations. A judgment in its broadest sense is the decision or sentence of the law given by a court of justice or other competent tribunal as the result of proceedings instituted therein. 33 *C. J.* 1047, § 1. A judgment is the judicial act of the court, it is a solemn record. 15 *R. C. L.* 571. It must not, and is not lightly disturbed. Thus, as indicated, on timely application and for good cause shown courts exercise the powers of controlling its judgments. And it is, of course, the obvious duty of a judge of a court to set aside a judgment which he concludes was erroneously entered by him. But what is the effect of setting aside or vacating a judgment? Generally speaking it is to leave the matter in controversy open for future determination. 15 *R. C. L.* 724, § 178. And that determination must afford the parties in interest the right of a fair trial. It is clear, that the trial judge did not, as he undoubtedly could have without a retrial, correct a mere formal error such as for example an error in the pleadings or one appearing on the face of the record, &c. There is, however, a wide gap between the right of opening, vacating or setting aside a judgment in a given cause and ordered the entry of a judgment, as here, without a retrial, from one in favor of the defendant to one in favor of the plaintiff and against the same defendant.

It would seem to us that it is merely begging the question to argue, as appellee does, that because there was no jury and there could be none on a retrial since none was demanded in the first instance (*Lerner* v. *McDermott,* 11 *N. J. Mis. R.* 99; 164 *Atl. Rep.* 844), that it would be idle or unnecessary for the trial judge to rehear the proofs. The issues were sharply controverted. The proofs might well not have been the same on a retrial. Assuming that there had been a jury and they, too, would have decided, as they could well have decided, on the disputed facts, that plaintiff was not entitled to recover, surely whatever legal reason there might have been for the setting aside of that verdict or the granting of a new trial, the court would have been powerless to change that verdict to one in favor of the plaintiff and against the same defendant.

In the case of *Rospond* v. *Decker,* 109 *N. J. L.* 458, the Court of Errors and Appeals, by Mr. Justice Case, held, after a jury, acting within the authority of the court's charge, has deliberated, rendered a verdict for the plaintiff and been discharged from the case, the court may not direct a verdict for the defendant on a reserved motion for a directed verdict grounded on a proposition that was submitted to the jury for factual determination.

And the fact that the trial judge sat without a jury did not give him power which he otherwise, under the law and circumstances, did not possess—namely, that of changing, as he did, without a retrial the verdict in favor of defendant to one in favor of the plaintiff. This lack of power deprived the trial judge of the authority, or jurisdiction, to enter the judgment in question.

This brings us to the next question, namely, what is meant by jurisdiction. An elaborate discussion of this point is contained in *Ritter* v. *Kunkle,* 39 *N. J. L.* 259. The rule established by this leading case is as follows:

"* . * * So that, in determining whether a particular judgment, in an action of debt, for example, may be reviewed by *certiorari,* the test question is, not whether the justice was authorized to try actions of debt, but whether, under the then

existing circumstances, he had authority to render any judgment between the parties.

"That the justice had no such authority, under the circumstances appearing in the present case, seems almost too plain for argument.

"To say that he had jurisdiction of the subject-matter and of the parties, at some previous time, and might then have lawfully adjudicated between them, is nothing to the purpose. *The point of inquiry is whether he had such authority at the time when the judgment in question was given.*

"For the assertion of jurisdiction with respect to any judicial act, *necessarily implies the assertion of authority to do that particular act at the very time when it was done.*

"Now, it is obviously true, as remarked by Mr. Freeman, in his treatise on the Law of Judgments, that 'a tribunal having undoubted jurisdiction of a cause at a certain stage, may lose such jurisdiction at some subsequent stage of the proceedings.' The same learned author remarks, further, that 'if the statute requires regular terms to be held for the trial of causes, the court, in the intervals between those terms is, for the purpose of conducting trial, in the same condition as though its authority over the case were entirely withdrawn. It is no longer a court.' Section 121. See, also, 10 *Coke* 77."

In the instant case, it is clear that at the particular time the judgment was entered the trial judge had no authority, or power, or jurisdiction to change his judgment without a retrial, on the ground that he had erroneously decided the case in the first instance.

At the argument of this cause counsel for appellee was given the right to raise and brief the added point, and counsel for appellant was, of course, given the right to reply thereto, as to whether the proper procedure to review the judgment, which is the subject-matter of this appeal is by appeal or by *certiorari.*

We are of the opinion that this question is not dispositive of the issues raised. Holding as we do that the trial judge was without power or authority to enter the judgment, it does not, under our cases, follow that the method of review

must be by *certiorari* to the utter exclusion of review by appeal. Our courts have held that where the court is without jurisdiction, a judgment rendered may be reviewed by appeal or by *certiorari*. And this appears to be true notwithstanding the language of section 89 of the District Court act to the contrary. This section is a prototype of section 96 of the Justices' Court act. Rev., page 556. The latter act provides:

"* * * where the justice has jurisdiction, no judgment hereafter to be rendered in any court for the trial of small causes from which an appeal is given * * * shall be removed * * * by *certiorari* or otherwise, for the correction of any supposed error therein; but the party thinking himself aggrieved shall have relief by appeal only * * * *."

In construing this provision of the act, Mr. Justice Woodhull, for this court, in *Ritter* v. *Kunkle, supra,* held (3) that where the justice has no jurisdiction, the remedies by appeal or *certiorari* are concurrent, "and the party thinking himself aggrieved may resort to either, at his option." This same principle was again enunciated by Chief Justice Gummere in the case of *Illingworth* v. *Rich* (1896), 58 *N. J. L.* 507, wherein he held:

"* * * for, assuming that he was, and that his demand for a jury deprived the District Court of jurisdiction to try the case otherwise than by a jury, he had two courses open to him for getting rid of an erroneous judgment, either by an appeal * * * or by suing out a writ of *certiorari*. * * * *That he had both these remedies* notwithstanding the seventeenth section of the 'Act to establish District Court in the city of Newark' (*Pamph. L.* 1873, *p.* 245), which forbids the removal * * * by *certiorari* of any judgment in a case where the judge had jurisdiction is clear. *Ritter* v. *Kunkle,* 10 *Vr.* 259."

And in the case of *Marcus* v. *Craver,* 71 *N. J. L.* 95, this court, by Mr. Justice Fort, held (at *p.* 97):

"* * * The act of 1902 (*Pamph. L.* 1902, *p.* 565), does not in any way inhibit the allowance of a writ of *certiorari* to review the proceedings of a judgment of a District Court, within the time fixed by the act for the appeal. The

act of 1902 simply provides a system or method of review by appeal as a matter of right, and must be taken to be an expression of legislative intent to establish an appeal as a concurrent method of review with *certiorari* within the time fixed by the act for an appeal. Such right of appeal in no way infringes upon the *certiorari* power of this court. *Both methods obtain;* the one as a matter of right, the other as a method of grace, resting in the discretion of the court or justice allowing the writ."

Compare, also, *Oetjen* v. *Hintemann,* 91 *N. J. L.* 429, 430; *Knapp* v. *Kremer,* 103 *Id.* 227, 228, 229.

In other words the rule was early established that where the court had jurisdiction, review could only be by appeal; and where the court had no jurisdiction, review could be by appeal or by *certiorari*. *Genuiario* v. *Gaudenzio* (1899), 64 *N. J. L.* 157. The decision in *Mellor* v. *Kaighn,* 89 *Id.* 545, is not to the contrary, inasmuch as it merely holds that where the lower court has no jurisdiction the proceedings are reviewable by *certiorari*. The case, however, does not exclude review by appeal. Likewise, the rule is well established that where the court has jurisdiction, and appellant choose to proceed by appeal he cannot afterwards proceed by *certiorari*. He is bound by his choice. (See *Illingworth* v. *Rich, supra; Furman* v. *Motley,* 67 *N. J. L.* 174; *Maguire* v. *Goldberger,* 71 *Id.* 173, and *State* v. *McCarty,* 99 *Id.* 64, 67.) Either method of procedure was, therefore, open to appellant.

Our disposition as to the method of procedure; our answer to the stated question in the negative, makes it unnecessary to treat of the other points raised.

Judgment is reversed.