Wilkinsburg Boro. *v.* School Dist., Aplnt.

194

Argued October 3, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*James E. Hindman,* for appellant.—The borough cannot maintain a municipal lien against property of a school district for a part of the cost of confining and enclosing Nine Mile Run, a natural watercourse flowing through the same.

A storm water sewer is but a vehicle to carry away flood waters and in certain districts the natural drain-

age of a watershed. This bears no relation to the sewer system of a municipality which is created as means of disposal of the sewage matter, the filth, refuse and waste matter of a people.

Public property is never subject to any manner of taxation in the absence of express legislative authority: no exemption is required: Erie v. School Dist., 17 Pa. Superior Ct. 33; Poor Directors v. School Dist., 42 Pa. 21; Pittsburgh v. School Dist., 204 Pa. 635.

In determining the propriety of striking off a judgment, the court may consider, in connection with the record, the undisputed facts presented by the parties, and if facts are admitted to be true which clearly establish that the court had no jurisdiction to enter the judgment, or that the judgment was erroneous as a matter of law, or that it was entered on a void warrant of attorney, the judgment will be stricken off: Stevenson v. Virtue, 13 Pa. Superior Ct. 103; Bryn Mawr Nat. Bank v. James, 152 Pa. 364.

*R. G. Bostwick,* of *Thorp, Bostwick, Stewart & Reed,* for appellee.—The proceeding below was a petition by the appellant to strike off a judgment obtained on a sci. fa. sur municipal claim; it seems unnecessary to cite authorities to this court for the proposition that the only question involved in such a proceeding is irregularity upon the face of the record; hence all averments of fact in the petition and answer are wholly irrelevant: Spiese v. Shee, 250 Pa. 399; Hamborsky v. Church, 78 Pa. Superior Ct. 519; Davidson v. Miller, 204 Pa. 223; Adams v. Grey, 154 Pa. 258.

There is no occasion to go outside the language of the Act of 1923. If that act does not authorize the collection of this claim, admittedly there is no right in this appellee to collect; likewise authorities prior to the act are inapplicable.

This court expressly said, construing the general Municipal Act of May 16, 1891, P. L. 75, that the word

"sewers" should be construed to include drains or ditches, open or covered: Strohl v. Boro., 178 Pa. 50.

The word "culvert" has been held to be synonymous with "sewer": Gale v. Dover, 44 Atl. 535.

While the instant case presents only questions of law on the record as made up, nevertheless the facts are with appellee.

OPINION BY MR. JUSTICE SADLER, November 25, 1929:

The School District of the Borough of Wilkinsburg acquired a tract of land containing 12 acres, as appears by the proceedings before the board of viewers, hereinafter referred to, from one Turner and wife, as a site for a school building and lawful purposes in connection therewith. Such structure was erected, and a playground, athletic field and recreation park provided for the use of the scholars attending. The entire plot was known as Turner Field, so named in honor of the parents of the grantors. By the School Code (May 18, 1911, P. L. 309, 347), the necessity for the purchase of land, and the determination of the purposes to which it should be devoted, was lodged with the directors of the school district, who are authorized to construct not only the building itself, but provide also for adjoining grounds to be used for play and recreation. The extent of the holding is for the board to pass upon, though property secured and devoted to other than educational or allied uses must be treated as separate from that set apart for school activities. Through this land ran an open stream, which carried off surface water from it and adjoining territory. The Borough of Wilkinsburg determined to cover this natural watercourse, and empty all the surface water from the region adjoining into an outlet on a near-by highway.

By the Borough Act of 1915 (May 14th, P. L. 312, article XII, chapter VI), followed in the provisions controlling here by the Code of 1927, passed after this proceeding was instituted, certain powers were granted to

the municipality. The section referred to authorized the creation of sanitary sewers to carry away filth, and, by article XVI of the same act, the right was granted to enter upon lands and enclose watercourses and confine storm waters. The first plan contemplated a sewer, and the second a control of surface drainage. The class of the construction provided for is important in determining the right to assess for benefits, as attempted here. Though the distinction between sewers and mere ditches and drains was held unimportant in Strohl v. Ephrata Boro., 178 Pa. 50, where an injunction was asked by a private owner to restrain a municipal improvement proposed under the Act of May 16, 1891, P. L. 75, it was because, in both cases, the property owner was bound, under that legislation, to pay the cost. It is, however, material here, since a school district cannot be assessed for benefits accruing from work done, except for that arising from the building of a "sewer or sewer connection." If the work undertaken was merely the enclosure of a stream, or the making of provision for the removal of surface water to another point, then no such claim can be sustained.

Property of municipal subdivisions of the State cannot be assessed unless some statute expressly so provides, and no exemption law is needed to relieve lands held for public purposes from such charges: Erie Co. v. City of Erie, 113 Pa. 360; Robb v. Phila., 25 Pa. Superior Ct. 343; Reading v. Berks Co., 22 Pa. Superior Ct. 373. Though unnecessary to effect this end, the School Code of 1911 did expressly exempt all property of the districts used for schools, recreation, or other purposes. It is chargeable with costs incurred by another municipal corporation on its behalf, where the claim is not the equivalent of a tax, as in the case of furnishing water for use from municipal waterworks: Bedford v. Schnably, 89 Pa. Superior Ct. 486. Here, we are dealing with an assessment for construction done under authority granted the borough. "Statutes imposing assessments

for local improvements are enacted in the exercise of the taxing power of the legislature. They, therefore, notwithstanding the generality of the enumeration of the property affected, do not apply or relate to property held or used for public purposes by the State or any of its political subdivisions": Pittsburgh v. Sterrett Subdistrict School, 204 Pa. 635, 643; Erie v. Erie School Dist., 17 Pa. Superior Ct. 33. This rule is generally recognized in other jurisdictions: Note, 36 A. L. R. 1540. To justify a municipal claim in such instances, express statutory authority must be shown. There is no presumption of an intention to permit such charge, but a clear direction to this effect must appear: Pittsburgh v. Sterrett Subdistrict School, supra; Com. v. P. R. T. Co., 287 Pa. 70.

The borough contends that this power has been given by the Act of 1923 (May 16th, P. L. 207), which permits assessments for "sewers and sewer connections," and it is necessary to determine whether the work here provided for was of the character defined in the statute. It will be noticed that the resolution of council provided only "for a culvert to cover creek bed, Laketon Road and Turner Street with connection on Marie Street," and the report of the viewers assessing benefits so describes it. No suggestion is made in the borough enactment, upon which the proceeding was based, that a sewer was to be constructed, and this is first heard of in the municipal claim filed, which says the construction was of a "sewer or culvert to completely enclose a portion of Nine Mile Run." The court, in the opinion later filed, called it a "culvert or sewer," which became a part of the "surface sewer system of the borough," and counsel, in this argument, call it a part of the "street sewerage system." There is no suggestion that it was a sanitary sewer. The borough had the power to enter land and erect culverts, and, also, if it saw fit, build sanitary sewers. These separate kinds of work are permitted by distinct clauses of the Borough Act, and are also recog-

nized as different classes of improvement in the first section of the Act of 1923, defining municipal claims, upon which the borough depends to sustain the present claim, but the fifth section gave the right to assess school districts for sewers only, and not culverts, and, in the absence of express legislation conferring this power, no such tax can be sustained.

"In the common sense of the term [a sewer] means a large, and, generally, though not always, underground passage or conduit for fluid and feculent matter, from a house or houses to some other locality, and usually the place of discharge. Other courts have defined a sewer to be a closed or covered waterway for conveying and discharging filth, refuse and foul matter, liquid or solid, while ditches are drains which are, or may be, open and so arranged as to take away surface water": Durham v. Eno Cotton Mills, 57 S. E. 465, 144 N. C. 705; 11 L. R. A. (n. s.) 1163, 1166; State Board of Health v. Jersey City, 55 N. J. Eq. 116, 35 Atl. 835. "Formerly, the word sewer was used to indicate a fresh water trench, compassed on both sides with a bank......[but] the term sewer cannot be construed to mean the same as drainage": Wetmore v. Fiske, 15 R. I. 354, 5 Atl. 375, 378. "[The] secondary meaning [of the word sewage] is derived from the usual character of the contents of a sewer, and, as used in that sense, the word signifies the refuse and foul matter, solid or liquid, which is so carried off": Morgan v. City of Danbury, 67 Conn. 484, 35 Atl. 499, 500. It must be kept in mind that the right to assess the school district rests on express statutory authority. The Act of 1923 gives the right to enter land to construct culverts, drains, ditches and sewers, but it is only in the latter case that power is granted to assess benefits. There is good reason for this distinction, since, in the latter case, the borough will necessarily undergo expense in disposing of the waste matter poured therein.

Though ditches, drains and sewers were treated as one and the same, as already noticed, in Strohl v. Ephrata

Boro., supra, yet there the property benefited was private and subject to benefits for work connected with any of the operations mentioned. In the present case, the school district is liable only where expressly charged by the statute, which is to be strictly construed, and is limited to the building of "sewers and sewer connections." Where a similar question arose in Ohio, it was said, "Each [kind of improvement mentioned] has a common, ordinarily accepted meaning of its own, and legislation by the council of a municipal corporation for the improvement of a street by paving, and providing for the construction of the necessary drains as an incident thereto, is not broad or comprehensive enough to clothe the city with jurisdiction to construct a sanitary sewer thereunder": Albrecht v. Cincinnati, 104 Ohio 266, 135 N. E. 541, 543; Lichtenwalter v. Akron, 158 N. E. 651. The Act of 1923 authorized assessment benefits only under certain specified circumstances. The borough could enter lands to enclose a culvert, as the resolution of council here provided, or it could do likewise to construct a sanitary sewer or connections, but it was only in the latter case that section 5 gave the right to file a claim against the school district for benefits.

In the present proceeding, the borough directed solely the closing of the watercourse and its connection with an outlet for the storm water collected. Viewers were appointed to assess benefits for this purpose alone, and charged the district with $10,800. A municipal claim was filed for this amount, and a scire facias issued thereon. The school authorities referred the matter of its liability to the solicitor for advice as to the proper action required, but no affidavit of defense was filed, with the result that judgment was entered by default on January 9, 1929. The claim of record showed an attempt to assess for benefits from a construction not a "sewer and sewer connection," within the strict meaning of these terms,—the only case in which such a charge could legally be made. Thereafter, an affidavit of defense, rais-

ing this question of law, was interposed, and a petition presented to set aside the judgment. After answer, this application was refused by the court on the ground of delay on part of the municipality in asserting its rights, and also because the entire 12 acres were not used for school purposes. As to the latter objection, it may be observed that the whole tract had been set apart by the directors for recreation purposes in connection with the building erected on the land, and its action in doing so was permitted by the School Code, and constituted a matter for the exercise of discretion of the board.

The complaint as to the pleadings rests on the failure to file an affidavit of defense until after judgment had been entered on the scire facias. The contention is made that this is required even in the case of the school district, since the General Act of 1923, regulating procedure in the enforcement of municipal liens, makes no express exception in this respect where a claim is against a municipality, as is true in actions of assumpsit and trespass by section 12 of the Act of March 10, 1921, P. L. 16, amending a like clause in the Practice Act of May 3, 1917, P. L. 149, which provided that municipalities shall not be required to file such pleading. It is insisted that this legislation does not apply to actions other than those named, and, therefore, not to a proceeding on a municipal claim under the Act of 1923, which repeals inconsistent legislation. Since 1858 (Act April 21st, P. L. 385, section 8) it has been the policy of the law not to require municipal corporations to answer in any case, for it was then enacted that all laws requiring otherwise be repealed. Though the Act of 1923 in turn repeals legislation in conflict with its general terms, it may be said that such general statute without negative words, though containing a clause repealing all laws inconsistent therewith, cannot operate to set aside a previous statute which is particular, even though the provisions of the one are different from the other: Com. v. P. & E. R. R., 164 Pa. 252. It is against reason to sup-

pose that the legislature, in framing a general system for the collection of municipal claims throughout the State, intended to repeal an act passed to meet special circumstances, or having a special object in view: Brown v. County Commissioners, 21 Pa. 37; Endlich on Interpretation of Statutes, pages 223, 303. The purpose of the Act of 1923 was to provide a general scheme for assessing benefits and collecting the amounts from the land itself, where improvements authorized have been undertaken. Though no express words relieved the municipal corporation, named as liable to the charge imposed, from filing an affidavit of defense, as required of the private owner, it is not clear that there was a purpose to abrogate the long established statutory rule that no such duty was imposed upon it.

Whether this conclusion be drawn or not, it is evident, from an examination of the claim here filed, that it was based on the benefit to the school district arising from the construction of a culvert. No act of assembly warrants the assessment, and, in the absence of express statutory imposition of liability, no charge could be lawfully made against it. Even though a judgment has been entered, as here, if the face of the record shows the same to be baseless, the court should strike it off: Constable v. Andrews, 297 Pa. 285; Kolf v. Lieberman, 282 Pa. 479; Bryn Mawr Nat. Bank v. James, 152 Pa. 364; Jordan v. Kirschner, 94 Pa. Superior Ct. 252; Stevenson v. Virtue, 13 Pa. Superior Ct. 103. If unauthorized and void, this may be done at any time, since the doctrine of laches is not to be applied under such circumstances: Romberger v. Romberger, 290 Pa. 454. In the present case, the claim, upon which the judgment is founded, shows an attempted assessment of school property for benefits due to the "constructing of a sewer or culvert to confine and completely enclose Nine Mile Run," and no power to file a municipal lien for the benefits resulting has been granted by any statute. Even if it was the duty of the school district to file an affidavit

of defense where a municipal lien was filed, yet the judgment entered must be stricken off when its purpose is to assert a claim for benefits without express legislative authority.

The order of the court below is reversed, and it is directed that the judgment be stricken from the record, at the cost of the appellee.