WESTFIELD TRUST COMPANY, PROSECUTOR, v. COURT OF COMMON PLEAS OF THE COUNTY OF MORRIS, BEATRICE W. CHERRY, ROBERT N. CHERRY AND SAMUEL ROESSLER, TRUSTEE IN BANKRUPTCY OF ROBERT N. CHERRY, RESPONDENTS.

WESTFIELD TRUST COMPANY, PLAINTIFF, v. BEATRICE W. CHERRY AND ROBERT N. CHERRY, DEFENDANTS.

Submitted October 12, 1934—Decided April 29, 1935.

Before Justices Heher and Perskie.

For the prosecutor, *Martin P. O'Connor.*

For the respondent Samuel Roessler, trustee in bankruptcy of Robert N. Cherry, *William A. Lord, Jr.*

The opinion of the court was delivered by

PERSKIE, J. Case No. 233 comes before us on a writ of *certiorari*, to review the order or rule of the Common Pleas Court of Morris county, dated June 1st, 1934, in and by which it was directed that the judgment which had been entered against the defendants Beatrice W. Cherry and Robert N. Cherry, on April 3d, 1933, in favor of the prosecutor, although previously docketed in the Supreme Court, should be vacated. Case No. 240 comes before us on the rule to show cause, why a writ of restitution should not be granted so that the moneys received by the prosecutor in payment of the judgment which had been vacated should be returned to the trustee in bankruptcy of the defendant Robert N. Cherry.

The stipulated facts disclose that Beatrice W. Cherry and Robert N. Cherry were indebted to the Westfield Trust Company in the sum of $5,377.41, on their promissory note. A default having occurred in the payment of the note the trust company instituted suit in the Morris County Common Pleas Court on March 16th, 1933. Endorsed on the summons and complaint was a notice requiring the defendants to file an affidavit of merits. Personal service was made upon Beatrice W. Cherry but service on Robert N. Cherry was made by leaving the summons and complaint at his place of abode with a member of his family above the age of fourteen years. Neither defendant filed an affidavit of merits. The statutory twenty-day period for the filing of the answers, if any were to be filed, expired on April 6th, 1933. Three days prior to that date, however, the plaintiff caused to be entered a rule for judgment by default for failure to file an answer; the damages were assessed by the clerk. Thereafter, on April 7th, 1933, the plaintiff caused its judgment to be docketed in the Supreme Court, and on April 18th, 1933, caused execution to be issued out of the Supreme Court directed to the sheriff of Union county.

Pursuant to said execution, the sheriff on April 21st, 1933, levied upon a $4,000 mortgage made by one Edward Erickson and wife, to John M. Cherry, and upon one hundred and

fifty shares of stock of the United States Steel Corporation belonging to the defendant Robert N. Cherry. After the statutory procedure had been complied with, the bond and mortgage and one hundred and forty-six shares of the said stock (defendant having claimed four shares as his exemption) were sold on June 6th, 1933, by the sheriff to the Westfield Trust Company for $50.

It also appears that on April 22d, 1933, Robert N. Cherry and Beatrice W. Cherry, his wife, gave a mortgage to the trust company, the stated reason being "to secure the sum of any and all promissory notes heretofore or hereafter made or endorsed by either of them * * * purchased or owned by the Westfield Trust Company." This mortgage was recorded on June 29th, 1933.

Subsequently, on August 25th, 1933, the trust company sold one hundred and ten shares of the said stock, which it had acquired at the sheriff's sale on June 6th, 1933, and realized therefrom the sum of $5,724.07, which it credited to the judgment and which amount was sufficient to pay the judgment and costs. The judgment, however, was not discharged of record.

On August 18th, 1933, defendant Robert N. Cherry was adjudicated a bankrupt and Samuel Roessler was appointed trustee and qualified as such on October 20th, 1933, Roessler being one of the respondents in the *certiorari* proceedings. Immediately thereafter, on October 31st, 1933, the Westfield Trust Company turned over to said trustee the remaining thirty-eight shares of the steel company stock, as well as the bond and mortgage purchased by it at the sheriff's sale. The trustee accepted these securities with the reservation that it should not operate as a waiver or foreclose his right to pursue any remedy he might have against the Westfield Trust Company for having sold the stock under the execution.

Whereupon the trustee in bankruptcy instituted a suit in the Court of Chancery against the Westfield Trust Company to set aside the sale of the sheriff as null and void and as preferential, and after the case was heard the bill of complaint was dismissed on April 17th, 1934. On June 1st, 1934,

the trustee applied to the Common Pleas Court of Morris county for an order vacating and declaring null and void the rule for judgment, and the certificate, statement and transcript of said judgment subsequently made by the clerk of the Common Pleas Court for the docketing of the judgment in the Supreme Court, and the judgment entered thereon, upon the ground that they "were illegally and fraudulently entered and were utterly void against the said defendant Robert N. Cherry and his said trustee in bankruptcy, because same were entered merely by the attorney for the plaintiff (and not signed by the judge) in less than twenty days from the date when said defendant was served with the summons and complaint in this action * * *." The Common Pleas Court being of the opinion, after argument and examination of the records, that the "judgment was improperly and unlawfully entered and utterly void," ordered that the rule for judgment and the judgment heretofore entered in the said cause, be vacated, made void and expunged from the record. Application was made by the trustee, as aforesaid, to this court for an order setting aside the docketing of the judgment in the Supreme Court and for a writ of restitution. The court denied the application, but allowed a rule to show cause. The court also allowed a writ of *certiorari*, on the application of the prosecutor, to review the vacating of the judgment by the Common Pleas Court. By stipulation both matters were argued together.

Bearing in mind that the rule for judgment was entered "as of course" by the attorney for respondent and without the signature of the judge, for the failure to file an answer (Section 133, Practice act, Revision of 1903, *Comp. Stat.* 1910, *pp.* 4094, 4095), although the time for the filing thereof had as yet not expired, three days remaining therefor, and the further fact that the judgment entered in the Common Pleas Court was docketed in this court (Judgments, III, Docketing, 3 *Comp. Stat.* 1709-1910, *pp.* 2957, 2958, 2959), we approach the consideration of the questions here presented and requiring decision by this court.

First: What was the effect of the docketing of the judgment in the Supreme Court?

It is the settled law that the effect of the docketing of the judgment, obtained in the Morris County Court of Common Pleas, in the Supreme Court merely gave a broader scope to its operation. *Twist* v. *Woerst,* 101 *N. J. L.* 7 (at *p.* 11). The judgment, however, remained for all intents and purposes, other than the latitude of its scope, the judgment of the Court of Common Pleas in which it was rendered. This being so, the court from which the judgment emanated retained control of its mandate, which control included the power to vacate the judgment on proper cause being shown. *Daniel* v. *Elmer,* 113 *Id.* 227; *Anderson* v. *Independent Order of Foresters,* 98 *Id.* 648; 126 *Atl. Rep.* 631; *Blessing* v. *Blackburn Varnish Co.,* 93 *N. J. L.* 321, 326.

Second: What was the legal effect of the judgment entered; was it a void or a voidable judgment?

We think that it was a void judgment. Section 133 of our Practice act of 1903, *supra,* provides: "If either party shall fail to file any necessary pleadings within the time limited or granted the adverse party may enter as of course either in term or vacation * * * rule for judgment by default * * *; and such rule when lawfully entered shall have the same force and effect as if entered by order of the court, *and if unlawfully entered shall be utterly void.*" (Italics ours.) In the case of *Hoey* v. *Aspell & Co.,* 62 *N. J. L.* 200 (at *p.* 201), this court held that the aforesaid provision of our Practice act is similar to and derived from section 144, General Statute, page 2557, and that "A mere rule in the minutes, entered by a plaintiff, or his attorney, under color of the statute, if unlawfully entered is utterly void, but this judgment was recorded and signed by the judge. Such a judgment, though irregular or premature, stands until reversed or set aside. 6 *Encycl. Pl. & Pr.* 58, 98." A mere inspection of the record, before the entry of the judgment, would have disclosed the error. Under such circumstances, on motion to set aside the judgment, "the court had no discretion to grant or refuse the motion, but were bound as *debito justiciæ,* to set aside the judgment." *Evans* v. *Adams,* 15 *N. J. L.* 373, 378; *Reading* v. *Reading,* 24 *Id.* 358, 362;

compare *Harrison* v. *Dobkin*, 11 *N. J. Mis. R.* 892 (a judgment entered upon a bond and warrant of attorney set aside for failure to file statutory affidavit). If a record shows a judgment without a lawful default the judgment is void on the face of the record. 34 *C. J.* 195, 196, § 418. A judgment may be set aside whether there was a total lack of authority to enter any judgment or only lack of authority, as here, to enter a particular judgment, when the entry of such a judgment was premature because the time for the filing of an answer had not expired. 34 *C. J.* 294. A void judgment may be vacated at any time. *McLaughlin* v. *Cross,* 68 *N. J. L.* 599, 601. But a mere irregularity in the entry of a judgment or the assessment of damages thereon, *i. e.,* a mere perfunctory matter (*Broad and Market National Bank* v. *Weisen,* 99 *Id.* 331; 124 *Atl. Rep.* 48), when the court otherwise has jurisdiction of the parties and of the subject-matter generally and specifically, may, of course, be waived or barred. *Fraley* v. *Feather,* 46 *N. J. L.* 429, 431; *Funk* v. *Smith, Ibid.* 484. But when, as here, the court entered the judgment illegally, it was, in the language of section 133 of our Practice act, utterly void. And being utterly void, it was a mere nullity. For a complete discussion of the differences between void and voidable judgments see 1 *Black on Judgments* (1890), *ch.* X, *p.* 194.

Third: Was the respondent trustee in bankruptcy entitled to relief in the premises; was he obliged to show surprise and merit, or was he barred because of laches?

In the case of *McLaughlin* v. *Cross, supra,* the court in discussing the standing of the parties making the application said:

"The standing to make the application, in order to relieve their property from the cloud of the judgment, has not been questioned, and was, we think, unquestionable. This court, in a very early case, set aside a judgment of its own, when shown to be voidable, on the motion of a grantee of the judgment debtor. *Reed* v. *Bainbridge,* 1 *South* 351. This principle of decision was afterwards doubted when sought to be applied in favor of creditors of the judgment debtor, but

later was upheld (*Clapp* v. *Ely, 3 Dutch*. 555, 569), and has recently been recognized as warranting an application, by execution creditors, to set aside an attachment improvidently issued against the debtor. *National Papeterie Co.* v. *Kinsey, 25 Vr.* 29. The practice is quite general to afford relief against void judgment to any person interested. 17 *Am. & Eng. Encycl. L.* 839." The trustee in bankruptcy is a person interested.

Having determined that the premature entry of the judgment herein was utterly void; that an utterly void judgment may be vacated at any time, since it is a mere nullity; we are clearly of the further opinion that, in accordance with the recognized exception to the rule, it was not necessary for respondent to show surprise or a meritorious defense in order to have the judgment vacated. 34 *C. J.* 427, 428, § 676. Nor can laches run against a void judgment; it is a mere blur on the record; it is the duty of the court on its own motion to strike it off, whenever its attention is called to it. *Romberger* v. *Romberger, 290 Pa.* 454; 139 *Atl. Rep.* 159. An unauthorized and void default judgment may be stricken from the record at any time; the doctrine of laches being inapplicable. *Borough of Wilkinsburg* v. *School District, 298 Pa.* 193; 148 *Atl. Rep.* 77. It is, of course, of no legal consequence but it is interesting to observe that prosecutor itself did not, as indicated by the stipulated facts, place much reliance or faith on the validity of its judgment in the premises. It would be far reaching in effect and, to say the least, would create great uncertainty among the members of the bar to hold that the entry of a judgment three days before the expiration of time for the filing of an answer results merely in a voidable judgment. What, in number of days, would be the dead line? It obviously must not be before the time fixed by law. We therefore conclude that the order vacating the judgment as well as the refusal of Mr. Justice Parker to disturb it (although he graciously allowed the writ) was correct. The writ is accordingly dismissed, with costs.

Fourth: Is the trustee entitled to a writ of restitution?

Having determined that the judgment is void the party benefiting by such a judgment after it has been paid or satisfied by execution, or by possession of the property, should be ordered to make restitution. 34 *C. J.* 389, § 598; 15 *R. C. L.* 724, § 178; *Scott* v. *Conover,* 10 *N. J. L.* 71; *Arrowsmith* v. *Vanarsdale,* 21 *Id.* 471.

The rule to show cause therefore in case No. 240, is made absolute, with costs.