## City of Washington, Appellant *v.* Alfred Johns et al., Appellees.

Argued March 12, 1984, before Judges WILLIAMS, JR., CRAIG and COLINS, sitting as a panel of three.

*Wray G. Zelt, III,* for appellant.

*Sanford S. Finder,* for appellees.

OPINION BY JUDGE CRAIG, April 23, 1984:

During a heavy rainstorm on May 12, 1979, a portion of the storm drainage system in the City of Washington overflowed into the basement of a home then owned by Alfred, Jennie, William and Emma Johns and Thelma Dezelan and occupied by Carolyñ Shuman and her family (collectively referred to as the Shumans). After a bifurcated nonjury trial, President Judge SWEET of the Court of Common Pleas of Washington County found the city liable for $9,-477.05 in property and delay damages. The city filed exceptions to Judge SWEET's verdict of liability and award of damages; a three-judge panel dismissed those exceptions and entered judgment against the city in two separate decisions.[4]

In this case of first impression, we must decide (1) if the sewer system exception to sovereign immunity under former section 202(b)(5) of the Political Subdivision Tort Claims Act (Act)[2] excludes storm drainage systems, so as to bar a determination of municipal liability here, and (2) if sufficient competent record evidence supports the common pleas court's ultimate finding of liability. *Jenkins Towel Service, Inc. v. Tidewater Oil Co.,* 422 Pa. 601, 604, 223 A.2d 84, 86 (1966) (findings of fact of a trial

---

[1] The en banc opinion on liability is reported as *Johns v. City of Washington,* 24 D. & C.3d 58 (1982).

[2] Act of November 26, 1978, P.L. 1399, *as amended,* formerly 53 P.S. §§5311.101-5311.803, repealed by section 333 of the Act of October 5, 1980, P.L. 693. Similar provisions are now found in sections 8541 through 8564 of the Judicial Code, 42 Pa. C. S. §§8541-8564.

judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal); Standard Pennsylvania Practice 2d, §91:121.

As reflected in the trial court's findings, the Shumans, as tenants, had lived in the home for approximately thirteen years before the May 1979 incident, and that storm water had backed into their basement about ten or twelve times previously because the city's public sewers were filled with dirt and mud. The court also found that both the owners and the tenants had requested the city to correct the problem on many occasions; the city, however, only responded once, by removing large quantities of dirt from the sewer in front of the residence.

During the May rainstorm, two to three feet of water backed into the Shumans' basement, a nearby manhole cover blew off, shooting water several feet into the air, and storm water, which overran the street curb, cascaded into the Shuman's front basement wall, causing part of it to collapse. The flood also undermined support for the front porch, which fell two to three inches. Later, the city pumped water from the Shumans' basement for several hours, leaving behind several tons of mud.

With eight exceptions, the Act immunizes political subdivisions from tort liability. To fall within one of the eight exceptions, a party seeking personal or property damage first must demonstrate a common law or statutory basis for recovery, 53 P.S. §5311.-202(a)(1),[3] and that the local agency or an employee acting within the scope of his office or duties caused the negligent act, 53 P.S. §5311.202(a)(2).[4]

---

[3] Section 202(a)(1) is now found at 42 Pa. C. S. §8542(a)(1).

[4] Section 202(a)(2) is now found at 42 Pa. C. S. §8542(a)(2).

The city contends that, in their complaint in trespass, the Shumans attacked only the inadequacy of the city's sewage system, a basis for recovery not recognized at common law. *Yulis v. Borough of Ebensburg*, 182 Pa. Superior Ct. 423, 128 A.2d 118 (1956). In *Yulis,* the Superior Court observed:

> By a long line of decisions our courts have held that municipalities are not bound to provide sewerage for the natural flow of the surface water, although they are invested with power to construct such sewers as in the judgment of the officers exercising the corporate powers are necessary and expedient. When they do adopt a plan of sewerage, they are not liable to answer in an action of trespass for damages resulting from the inadequacy of the sewers constructed according to the plan to meet the purpose contemplated, although they may be called upon to answer for injuries resulting from negligence in the actual work of construction or for failure to keep the work in repair after it is completed.

182 Pa. Superior Ct. at 426, 128 A.2d at 120.

Here, Judge SWEET permitted the Shumans to introduce evidence of negligent maintenance. Mrs. Shuman, for example, testified that, despite several requests to clean the two drains in front of her house, the city responded only once, removing enough dirt to fill five or six wheelbarrows. Because the proof presented at trial went beyond mere inadequacy of the system and toward the establishment of negligent maintenance, the precise issue here is whether there was a material variance between pleading and proof. Although the city has neither raised nor preserved the issue in those terms, we have examined it nevertheless, and conclude that the variance is immaterial. *See* Goodrich-Amram 2d §1033:11. The rule that

pleadings and proof must conform to one another is to enable the defendant to prepare his defense by being informed of the issues in advance. *Widmer v. Widmer*, 176 Pa. Superior Ct. 264, 267, 106 A.2d 875, 876 (1954). Significantly, at no point in the record has the city claimed prejudice or surprise.

Having developed proof of negligent maintenance at trial, the Shumans established a common law basis for their cause of action. *Yulis.*

Section 202(b)(5) provides that a local agency or any of its employees may be liable for "[a] dangerous condition of the facility's steam, sewer, water, gas or electric systems owned by the local agency . . . ." 53 P.S. §5311.202(b)(5).[5] To recover, a claimant "must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." *Id.*

The city contends that, under *Wilkinsburg Borough v. School District*, 298 Pa. 193, 148 A. 77 (1929), the word "sewer" refers only to sanitary sewers and not storm drainage systems. *See also Medicus v. Upper Merion Township*, 108 Montg. L. Rep. 112 (1980). Accordingly, the city argues that the General Assembly did not intend to create an exemption from liability for damage resulting from a dangerous condition created by the negligent maintenance of a storm water drainage system. We disagree.

*Wilkinsburg Borough* is distinguishable as a tax assessment case, where the Supreme Court construed the word sewer narrowly to effectuate the purpose of the Borough Codes of 1915 and 1927; the Supreme

---

[5] Section 202(b)(5) is now found at 42 Pa. C. S. §8542(b)(5).

Court reasoned that the legislature granted boroughs the power to tax the construction of sanitary sewers and not storm water drainage systems, so that local governments could recoup the expense of disposing of the waste matter. 298 Pa. at 199, 148 A. at 80.

Here, no similar purpose would be served by construing "sewer" narrowly. Indeed, a narrow construction would lead to an unreasonable result, because local agencies would be liable for failing to correct dangerous conditions in their sanitary sewers, but would have no incentive to correct such conditions in their storm water drainage systems. *See* section 1922 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922 (in ascertaining legislative intent, courts may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable). We are mindful of the existence of combination sewers, serving both storm and sanitary drainage functions. *See, e.g., Gericke v. City of Philadelphia,* 353 Pa. 60, 44 A.2d 233 (1945).

Moreover, after *Wilkinsburg Borough,* the Supreme Court has not always maintained a rigid distinction between sanitary and storm drainage systems; often, the court has used the word sewer to refer to one or both uses. *See, e.g., Borough of Ambler v. Shepherd,* 443 Pa. 375, 278 A.2d 886 (1971) (surface water sewer system); *Cooper v. City of Reading,* 392 Pa. 452, 140 A.2d 792 (1958) (storm sewer system); *Gericke,* 353 Pa. 60, 44 A.2d 233 (1945) (integrated sewer system).[6]

---

[6] At least with respect to integrated systems, we must also question the continuing vitality of *Wilkinsburg Borough,* given the Supreme Court's observations in *Gericke v. City of Philadelphia,* 353 Pa. 60, 44 A.2d 233 (1945). There, the court noted that Philadelphia maintains an intergated system for the collection of sanitary and industrial sewage, storm water, and other surface waters. *Id.* at 64, 44 A.2d at 235. Thus, in rejecting a sewer system user's chal-

The city also contends that there was insufficient competent evidence to establish liability. We disagree. A number of witnesses stated that (1) the system had caused street flooding and basement backups in the past, (2) the city had been notified of the recurring problem, (3) it responded only once to numerous complaints, and (4) when it did respond, city employees removed a significant amount of dirt from the system. Certainly, there was sufficient evidence to establish both notice and reasonably foreseeable risk, as required by the Act.[7]

Accordingly, we affirm.

## ORDER

Now, April 23, 1984, the judgment of the Court of Common Pleas of Washington County at No. 233 February Term 1980, dated February 7, 1983, in favor of Alfred Johns, Jennie Johns, William Johns, Emma Johns and Thelma Dezelan in the amount of $6,500 plus delay damages in the amount of $1,397.72 and in favor of Carolyn S. Shuman against the City of Washington in the amount of $1,300 plus delay damages of $279.33, is affirmed.

---

lenge to a city ordinance imposing a sewage charge, the court stated that "whether or not council intended to make the expense of disposing of storm water an element in the sewerage charge, the direct benefit to the property served amply warrants the city in including it in the charge."

[7] We find no merit in the city's argument that, by amending their complaint as to the date of the incident, the Shumans prejudiced the city's case or ran afoul of the statute of limitations.

We also find no merit in the city's attack on the amount of damages awarded here. There was record evidence to support the court's finding of damage to both the porch and the basement, as well as testimony estimating the amount necessary to effectuate repairs. *Ashcraft v. C. G. Hussey and Co.*, 359 Pa. 129, 58 A.2d 170 (1948) (precise proof as to extent of damages not a requisite to recovery).