**Roger G. GIBELLINO, Appellant**

v.

**MANCHESTER TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2014.

Decided Jan. 23, 2015.

Larry C. Heim, York, for appellant.

John J. Mahoney, Chester Springs, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

Roger G. Gibellino (Gibellino) appeals the order of the Court of Common Pleas of York County (trial court) sustaining the preliminary objections of Manchester Township (Township)[1] and dismissing without prejudice Gibellino's second amended complaint (Complaint) alleging liability for damages caused by a backflow of raw sewage onto his property caused by negligent backflow devices installed by the Township. We affirm.

I.

A.

Gibellino owns commercial property with improvements at 2474 North George Street in the Township. The Township owns and maintains sewer and storm lines

1. Manchester Township is a Second Class Township. 121 The Pennsylvania Manual 6– 96 (2013).

that are connected to Gibellino's property.[2] In September 2004, the remnants of Hurricane Ivan caused a surcharge [3] of the Township's sewage system which damaged his property. (Complaint at ¶ 5).

In December 2004, the Township sent Gibellino a letter stating that "Township is willing to install, at its expense, a manually closing backwater valve [4] on the lowest portion of the building drain which serves your property." (Complaint Exhibit A at 1). The letter continued:

> Please be advised that while automatically closing backwater valves are available, the cost of this style [of] backwater valve is significantly higher than a manual style valve . . . an automatic style valve, when closed, would prohibit any discharge of waste water from a plumbing fixture in your building. . . . [The Township] would be willing to install an automatic style valve on your building drain, however, because of [the Township's] 1995 policy, you would be responsible for paying the cost difference between the two different types of valves.

(*Id.* at 1–2).

In June 2005, the Township sent Gibellino another letter stating:

> [The Township] has received proposals for an automatic operating backwater valve[ ] and a manual backwater valve. The lowest proposal price was submitted by Bryan Mechanical. As per the attached proposal your portion of the costs would be $2,382.00 for the installation of the automatic operating backwater valve. If this cost is acceptable to you please notify me in writing so that a purchase order can be issued for this work.
>
> [The Township] will still be paying for the installation of the manual closing backwater valve regardless of your decision.

(Complaint Exhibit B at 1).

Gibellino opted for both an automatic backwater valve and a manual backwater valve and both were installed by the Township's contractor on his property. (Complaint at ¶¶ 9, 10). In September 2011, a surcharge of the Township's sewage system occurred, both valves on Gibellino's property failed, and raw sewage backed up onto the property causing extensive damage. (*Id.* at ¶¶ 11–12).

**B.**

Gibellino filed a complaint, an amended complaint and a second amended complaint in the trial court against the Township seeking damages of $124,927.83, plus the loss of $10,000.00 in rental income.

---

2. *See* Section 1522 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, added by Act of November 9, 1995, P.L. 350, 53 P.S. § 66522 ("The board of supervisors may by ordinance make regulations respecting the installation of individual or community sewage treatment facilities under [the act known as the "Pennsylvania Sewage Facilities Act," Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§ 750.1–750.20a].").

3. "Surcharge" is defined as "an additional and usually excessive charge, load, burden, or supply." Webster's Third New International Dictionary 2299 (1993).

4. There are two types of backwater valves: manual and automatic. Both types of valves provide emergency protection in the event of a surcharge by limiting sewage flow only in a downstream direction. (Complaint at ¶¶ 20, 21). A manual backwater valve must be physically closed by the property owner when a backflow occurs. (Complaint Exhibit A at 1–2). An automatic backwater valve eliminates the need to physically close the valve by sensing potentially problematic backflows. (*Id.*). In 1995, the Township instituted a policy of installing manually closing backwater valves on the building drains of its properties. (Complaint at ¶ 4).

(Complaint at ¶¶ 12–13). In Count I, Gibellino raised a breach of contract claim, alleging that he accepted the Township's offer to install the valves under the terms set forth in the letters thereby forming a contract and that "the Township impliedly warranted that the installation would be done in a reasonably workmanlike manner." (*Id.* at ¶¶ 17, 18). Gibellino alleged that the Township through its contractor installed the valves defectively in an unworkmanlike manner thereby allowing raw sewage to flow onto the property causing the enumerated damages and breaching its contract.[5]

In Count II, Gibellino raised a negligence claim, alleging that the Township was negligent in maintaining its sanitary sewer and storm drainage systems which resulted in repeated surcharges causing damages such as his and that it took no meaningful measures to correct this dangerous condition. He alleged that because the Township had actual or constructive notice of this dangerous condition which created a reasonably foreseeable risk of the damage that he actually suffered, the Township is not immune from liability under Section 8542(b)(5) of the statute commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8542(b)(5).[6]

The Township filed preliminary objections in the nature of a demurrer to the Complaint. Regarding Count I, the Township claimed that under the "gist of the action" doctrine,[7] Gibellino's contract claim

---

5. Specifically, the Complaint alleged:

   21. The installation of the manual backwater valve by the Township through its contractor was defective and unworkmanlike in that it was installed without its flapper mechanism, allowing the back flow of raw sewage into the Property causing the damages set forth above, which would otherwise have blocked the back flow had it been properly installed.

   \* \* \*

   23. The installation of the automatic backwater valve by the Township through its contractor was defective and unworkmanlike in that it was not installed in an area with a sump pump, so that when ground water penetrated the pit it submerged the valve diaphragm and expansion chamber causing excessive pressure on the diaphragm which in turn caused the val[v]e to fail to open and allowed the back flow of raw sewage into the Property causing the damage set forth above.

   (Complaint at ¶¶ 21, 23).

6. Section 8542(b)(5) states, in pertinent part:

   **(b) Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

   \* \* \*

   (5) *Utility service facilities.*—A dangerous condition of the facilities of … sewer … systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

7. The Pennsylvania Superior Court has explained that the gist of the action doctrine:

   is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. Th[is] Court explained the difference between contract claims and tort claims as follows:

   [a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract

was actually a disguised tort claim based on the negligent installation of the backwater valves and that it was immune from liability under Section 8541 of the Tort Claims Act, 42 Pa.C.S. § 8541.[8] (Reproduced Record (RR) at 19a–21a). Regarding Count II, the Township asserted that it does not own the instrumentality that caused the alleged harm, the negligently-installed valve or valves, and it is not part of the utility system so the exception contained in Section 8542(b)(5) of the Tort Claims Act does not apply in this case. Finally, the Township also submitted that it cannot be held vicariously liable under the Tort Claims Act based on the contractor's negligence in installing the valves.

In November 2013, the trial court sustained the Township's preliminary objections and dismissed Gibellino's Complaint. The trial court first determined that the Township is immune because Gibellino's allegations in Count I clearly sound in tort as they are based on the contractor's negligence in failing to properly install the backwater valves, and "to allow recovery for [the] failure to perform work with proper care and competence but refuse to allow recovery for negligence would be counter-intuitive and would allow [Gibellino] to improperly circumvent the provi-

sions of governmental immunity simply by couching his tort claim in the framework of a breach of contract action." (11/18/13 Trial Court Opinion at 5). The trial court also found that Gibellino did not state a claim in Count II falling within the exception in Section 8542(b)(5) because it requires that " 'the allegedly dangerous condition must have derived or originated from, or had its source as the local agency's realty,' " and the Township did not own the negligently-installed valves and they were not installed in its right-of way. (*Id.* at 8–10) (citation omitted). Gibellino then filed the instant appeal.[9]

## II.

### A.

Gibellino first claims that the trial court erred in concluding that Count I was legally insufficient under the gist of the action doctrine and in recasting the claim raised therein as the negligent installation of the backwater valves to which the Township is immune under the Tort Claims Act. We do not agree.

In *Schreck v. North Codorus Township*, 126 Pa.Cmwlth. 407, 559 A.2d

---

*inter se* would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
*eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa.Super.2002) (citations omitted). Likewise, the gist of the action doctrine precludes plaintiffs from recasting a claim for the recovery of tort damages under a breach of contract theory to avoid the defense of governmental immunity. *Matarazzo v. Millers Mutual Group, Inc.,* 927 A.2d 689, 693–94 (Pa.Cmwlth.2007).

8. Section 8541 states, in relevant part, "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of injury to ... property caused by any act of the local agency or an employee thereof or any other person."

9. As this Court has recently explained when considering whether an exception to immunity applies on preliminary objection:

> We may affirm the granting of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom.

*Gale v. City of Philadelphia,* 86 A.3d 318, 319 n. 2 (Pa.Cmwlth.2014) (citation omitted).

1018 (1989), *appeal dismissed*, 526 Pa. 266, 585 A.2d 464 (1991), the purchasers of lots or homes in a subdivision filed suit against a township and its sewage enforcement officer for damages caused to their property by malfunctioning sewage systems. Their assumpsit claims against the township alleged that the systems were negligently installed because the township improperly issued the permits by failing to perform the necessary soil tests because it failed to analyze soil conditions thereby permitting construction on land unsuitable for those systems. This Court rejected their implied warranty claims, explaining that while Section 2314(a) of the Pennsylvania Commercial Code (PCC), 13 Pa.C.S. § 2314(a),[10] provides an implied warranty

that goods sold are merchantable if the seller is a merchant with respect to goods of that kind,[11] it was not alleged that either the township or its officer sold "goods" impliedly warranted to be merchantable under the PCC and that they were immune from suit under the Tort Claims Act because they provided services rather than goods. *Schreck*, 559 A.2d at 1024. Likewise, in the instant case, Gibellino's claim in Count I is premised on the purported improper installation of the backflow valves, a negligence claim, and he cannot couch his claim as a breach of an implied warranty in order to avoid the immunity provisions of the Tort Claims Act where, as here, a purportedly negligent service

10. Section 2314(a) states in relevant part that "[u]ness excluded or modified . . ., a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ."

11. *But cf. Gall v. Allegheny Health Department*, 521 Pa. 68, 555 A.2d 786, 789–90 (1989) (holding that a cause of action against a municipality and water authority for supplying contaminated water could be maintained for breach of implied warranty of merchantability under Section 2314(a) and implied warranty of fitness for a particular purpose under Section 2315, 13 Pa.C.S. § 2315, because the water supplied constituted a "good" under the PCC); *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771, 777 (1972) ("We thus hold that the builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation."); *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 197 A.2d 612, 614 n. 8 (1964) ("It is undisputed that the supplying of gas to [the customers]' home on a month-to-month basis falls within the definitions of a 'contract for sale' or 'sale' within Section 2–106 of the [former version of the PCC, Act of April 6, 1953, P.L. 3, formerly] 12 P.S. § 2–106."); *Whitmer v. Bell Telephone Company of Pennsylvania*, 361 Pa.Super. 282, 522 A.2d 584, 587 (1987) ("While the telephone company does provide certain incidental communications (for instance, directory assistance), *the*

*predominant nature of the transaction remains the transmission of consumer provided communications* from one location to another which is the rendition of a service. When the transaction involves predominantly the rendition of services, the fact that tangible movable goods may be involved in the performance of services does not bring the contract under the [PCC].") (citations omitted and emphasis in original); *Schriner v. Pennsylvania Power & Light Company*, 348 Pa.Super. 177, 501 A.2d 1128, 1134 (1985) ("[I]f electricity 'in a defective condition, unreasonably dangerous' passes through the meter of a user or consumer and into the stream of commerce, causing physical harm to the ultimate user or consumer, or to his property, the doctrine of strict liability in tort may be applied against the public utility which 'engaged in the business of selling such product,' which product '[was] expected to and [did] reach the user or consumer without substantial change in the condition in which it was sold.' Restatement (Second) of Torts § 402A(1)."); *Wivagg v. Duquesne Light Company*, 73 Pa. D. & C.2d 694, 702 (1975) ("[T]his court concludes that the transaction involved herein is sufficiently analogous to a 'sale' to justify the extension of the [former PCC]'s warranty protection to the injured parties. An implied warranty of safe and hazard-free electrical service arises from the supply of electricity by the defendant public utility.") (citation omitted).

was performed by the Township's contractor. *Id.*[12]

## B.

■ Gibellino also argues that the trial court erred in dismissing Count II because he sufficiently pleaded a claim falling within the Section 8542(b)(5) exception to immunity under the Tort Claims Act. In the Complaint, Gibellino specifically alleges that "[t]he Township was negligent in maintaining its sanitary sewer and storm drainage system that it owned" in that "in the years since 1995, [it] ha[s] taken no meaningful measures to stop the repeated sanitary sewer surcharges in times of high water flow, which sewage surcharges created a 'dangerous condition' within the meaning of 42 Pa.C.S. § 8542(b)(5)." (Complaint at ¶¶ 28, 29).

Generally, local agencies are immune from tort liability under Section 8541 of the Tort Claims Act:

> However, a cause of action may be maintained where: (1) the damages would be otherwise recoverable under common law or statute if the injury was caused by a person not protected by immunity, 42 Pa.C.S. § 8542(a)(1); (2) the injury was caused by the negligent act of the local agency or an employee thereof acting within the scope of his official duties; and (3) the negligent act falls within one of the enumerated exceptions to governmental immunity set forth in 42 Pa.C.S. § 8542(b).

*Metropolitan Edison Company v. Reading Area Water Authority,* 937 A.2d 1173, 1175 (Pa.Cmwlth.2007).

To fall within the exception to immunity, Section 8542(b)(5)[13] provides that Gibellino was required to allege facts that established:

> 1. the dangerous condition created a reasonably foreseeable risk of the kind of injury that occurred;
>
> 2. the local agency had actual notice or could reasonably be charged with notice; and

---

**12.** *See also Bendas v. Upper Saucon Township,* 127 Pa.Cmwlth. 378, 561 A.2d 1290, 1293 (1989) ("Appellant's assumpsit count sounds in tort as Appellant essentially avers that the Township negligently issued the permit in question. Previous attempts to disguise tort causes of action not falling within the exceptions to governmental immunity as assumpsit counts to avoid the immunity provisions have been rejected by this Court. Nor may an implied warranty of merchantability attach to the Township's testing and permit issuance pursuant to Section 2314 of the [PCC] as these acts constitute 'services' rather than 'goods.'") (citations omitted); *Gilius v. Board of Supervisors of Fairview Township,* 122 Pa. Cmwlth. 371, 552 A.2d 327, 330 (1988), *appeal denied,* 523 Pa. 633, 564 A.2d 1262 (1989) ("[T]he landowners' attempt to recover damages from the appellees on a cause of action for breach of an implied warranty must fail. These counts clearly sound in tort, because in essence they charge that the Board, through its agent, ... was negligent in that the latter failed to perform a percolation test in a competent non-negligent manner. This court has previously rejected attempts to avoid the immunity provisions of Subchapter C by alleging causes of action which sound in tort but are fashioned as assumpsit counts.") (citation omitted).

**13.** As indicated, this exception to immunity as set forth in the Tort Claims Act is:

> A dangerous condition of the facilities of ... sewer ... systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(5).

3. notice had been received for a sufficient period of time to enable the local agency to correct the dangerous condition.

Notice under this provision can be established by evidence of past incidents of flooding or breaks within the area. *Medicus v. Upper Merion Township*, 82 Pa. Cmwlth. 303, 475 A.2d 918, 921–22 (1984); *City of Washington v. Johns*, 81 Pa. Cmwlth. 601, 474 A.2d 1199, 1203 (1984). A "sufficient period" is determined by "the amount of time reasonably required to take protective measures, including inspections required by law.. . ." Section 8542(c) of the Tort Claims Act, 42 Pa.C.S. § 8542(c). The time determination shall be made "with reference to the actual equipment, personnel and facilities available to the local agency and competing demands therefor." *Id.* While the Township is liable for damages resulting from its negligent construction or failure to repair its sewer system at common law, it is not liable for the inadequacy of the system. *McCarthy v. City of Bethlehem*, 962 A.2d 1276, 1279 (Pa.Cmwlth.2008), *appeal denied*, 603 Pa. 706, 983 A.2d 1250 (2009), citing *Johns* and *Yulis v. Borough of Ebensburg*, 182 Pa.Super. 423, 128 A.2d 118, 120 (1956).[14]

As outlined above, Gibellino's claims regarding the alleged dangerous condition of the Township's sewer system was the inadequacy of the system to handle surcharges in times of high water flow and did not relate to the Township's negligent construction or repair of the system thereby bringing the claim within the Section 8542(b)(5) exception to immunity under the Tort Claims Act. As a result, the trial court did not err in sustaining the Township's preliminary objections and dismissing Gibellino's complaint.[15]

Accordingly, the trial court's order is affirmed.

### *ORDER*

AND NOW, this *23rd* day of *January*, 2015, the order of the Court of Common Pleas of York County dated November 20, 2013, at 2013–SU–2664–84, is affirmed.

CONCURRING and DISSENTING OPINION BY Judge SIMPSON.

I respectfully disagree with that part of the majority opinion which deals with Count I (Breach of Contract) of the second amended complaint. For the following reasons, I would reverse the trial court and overrule the preliminary objection which essentially raised governmental immunity to this claim.

Count I of the second amended complaint, together with the attached exhibits,

14. *See also LaForm v. Bethlehem Township*, 346 Pa.Super. 512, 499 A.2d 1373, 1382–83 (1985) ("Where a landowner, whether municipal or private, undertakes to install storm sewer facilities, then he takes upon himself the duty to avoid negligence in their construction or maintenance. However, a landowner cannot be compelled to install such facilities, nor is he answerable in damages for the inadequacy of the facilities installed.") (citations omitted).

15. *See Reidy v. Lycoming County Water and Sewer Authority*, 2010 WL 9511372 (Pa. Cmwlth. No. 1079 C.D.2009, filed June 7, 2010), slip op. at 6–7 ("Here, the Reidys have

not supported their claim against the Authority with any evidence establishing that the sewage system was negligently constructed or in disrepair, nor have they provided any evidence, testimonial or otherwise, establishing that their injuries were caused by anything more than the inadequacy of the sewage system to handle the influx of grease from a neighboring business. Because the Reidys have pointed to no evidence in the record that would support their assertion that they are entitled to proceed with their claim, the trial court did not err in granting summary judgment.") (footnotes omitted).

contains the following averments: In September, 2004, a surcharge of Manchester Township's sewer system occurred which damaged Gibellino's commercial property; as a result of this past·dealing between the parties, the Township offered in writing to supply and install at no charge a manually closing backwater valve; in addition, the Township offered in writing to supply and install for a fee "an automatically closing backwater valve" which would *eliminate the need for you or your agent to manually close the valve,*" and, "*when closed, would prohibit any discharge of waste water from a fixture in your building....*" Reproduced Record at 14a, Second Am. Compl., Ex. A at 2.

Read in a light most favorable to the non-moving party, the second amended complaint also contains the following averments: Gibellino accepted the Township's offer and paid the amount requested; the Township, a known principal, selected the valves and delegated its duty of installation to a contractor, who installed both valves; the "automatically" closing backwater valve was installed incorrectly, so that it did not automatically close and did not prohibit discharge of waste water into Gibellino's commercial building; and, as a result of a storm in September, 2011, Gibellino suffered a discharge of Township waste water causing losses, including lost rental income.

When analyzing a claim against an immunity challenge under Section 8541 of the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8541, we recognize that the language of the statute conferring governmental immunity pertains to conduct causing injury to a person or property. *Meyer v. Cmty. Coll. of Beaver Cnty.*, 606 Pa. 539, 2 A.3d 499 (2010). These terms reflect the main policy consideration historically underlying tort law, whereas the central focus of contract law is the protection of bargained-for expectations. *Id.* at 502.

While Count I contains averments of injury to property, it is clear that the thrust of this claim is Gibellino's bargained-for expectation that by paying a price for purchase and installation of an automatically closing backwater valve, he could prevent a repeat of the 2004 discharge of Township waste water into his business property. In short, the "automatically" closing backwater valve did not do what the parties expected, causing business losses to Gibellino. Thus, Gibellino's claim in Count I sounds in contract, not in tort. As a result, the Tort Claims Act should not bar the claim.

Judge McCULLOUGH joins in this Concurring and Dissenting opinion.