IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Praise Power and Deliverance Church | : | No. 623 C.D. 2015 |
| | : | No. 702 C.D. 2015 |
| v. | : | Argued: May 12, 2016 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Vernon Ancrum, Individually and in his Capacity as Administrator of the Estate of Deanna Nicole Compton, Deceased, 419 West Earlham Terrace, Philadelphia PA 19144 | : : : : : : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia, | : | |
| | : | |
| Appellant | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                          FILED: July 20, 2016


The City of Philadelphia (City) appeals from the March 17, 2015 orders of the Court of Common Pleas of Philadelphia County (trial court), which, following a jury trial, denied the City's post-trial motions and entered judgment in favor of Plaintiffs, Praise Power and Deliverance Church and Vernum Ancrum. We affirm.

## **Facts/procedural history**

The intersection of East Haines Street, Belgrave Avenue, and Mulgrave Street in Philadelphia has eight sewer inlets, two on each of the four corners, which lead to the City's storm water system. The inlets open onto the street. Beneath the opening of each inlet is a twelve-foot-deep cement catch basin. Inside each basin is an inlet pipe that rises up three feet from the bottom of the basin. When water in the catch basin reaches the level of the inlet pipe, the water escapes the basin and continues through the City's storm water system. The catch basin is split by a wall that stops short of the floor, the purpose of which is to prevent debris from entering the inlet pipe. The intersection is in a low-lying area that has a history of flooding, of which the City was aware.

Debris tends to accumulate more quickly in sewer inlets in low-lying areas. The City Water Department's practice is to clean each inlet once a year, unless there is a specific complaint. The Inlet Cleaning Unit uses a mechanical hydraulic bucket to remove debris and clears leftover debris by hand. A separate unit, the Sewer Maintenance Unit, performs repairs to the inlets.

In 2011, the City Water Department cleaned out all of the inlets at the intersection. In March 2011, a City Water Department representative met with local residents about problems with flooding in the area. Between March and September 2011, the Sewer Maintenance Unit received reports that four of the inlets at the intersection needed repairs, but the City neglected to perform the repairs. The intersection flooded in August 2011. Subsequently, between September 5 and 8, 2011, the remnants of Tropical Storm Lee moved through the area dropping a total of 7.2 inches of rain.

In March 2011, Pastor Todd Dunbar purchased the property at 528 East Haines Street, Philadelphia, at the intersection of East Haines Street, Belgrave Avenue, and Mulgrave Street, for the location of his new church, Praise Power and Deliverance Church. Pastor Dunbar made many improvements to the church, including new carpets, new furniture, reupholstered pews, renovations to the bathrooms and the basement, and painting of the entire church. The cost of these improvements was approximately $15,000 to $20,000.

The flooding in August 2011 caused water damage to the church; water came into the church basement, up through the toilets and sinks. Pastor Dunbar and three church members had to have their cars towed from the front of the church due to the flood waters. Two church members contacted the City after the flooding in August 2011 on Pastor Dunbar's behalf, but the City failed to respond.

On September 8, 2011, between 1:45 a.m. and 2:30 a.m., the area of East Germantown received 2.12 inches of rain. This amount was almost half of the average monthly rainfall in September for the area. The intersection was flooded. When Pastor Dunbar arrived at the scene, he observed three cars stranded in the street, yellow tape blocking certain areas, and members of the police and fire departments who had responded to the flooding. The entire basement of the church was submerged in water; carpet and pews were wet, and furniture was destroyed. The City Water Department pumped the water out of the basement the following day. Due to the damage from the September 8, 2011 flooding, services at the church were suspended until March 2013.

Deanna Compton was driving home at approximately 2:00 a.m. on September 8, 2011, when her vehicle became stuck in flood waters at the

intersection. Ms. Compton, who could not swim, called her father, Vernon Ancrum, a City police officer, to help her out of her vehicle. Unable to reach her father, Ms. Compton called 911 for help. Mr. Ancrum did not hear the phone ring when his daughter called, but when he awoke at 2:00 a.m., he saw that he had missed her call and another from an unfamiliar number. When Mr. Ancrum could not reach his daughter he called the other number, which turned out to be police radio, and learned that his daughter's car was stuck in the flood waters. Mr. Ancrum drove to the scene and saw the top of his daughter's car sticking out of the water. He was prevented from approaching it by police and fire vehicles and yellow tape. A police officer told Mr. Ancrum that no one was in his daughter's car, and he returned home.

No one heard from Ms. Compton after she made those two calls, and a missing person's report was filed. That same night a police detective went to the intersection and searched for her. He then decided to investigate her vehicle, which had been towed from the scene. The detective found her car at a tow yard and found Ms. Compton's body on the floor, lodged between the second and third row of seats. Fire and rescue pronounced her dead; the cause of death was drowning.

Praise Power filed a complaint against the City on November 8, 2012, and Mr. Ancrum did the same on December 13, 2012. On September 9, 2013, Plaintiffs' cases were consolidated for purposes of discovery and trial. Trial was held from January 12, 2015, to January 21, 2015.

The question of negligence was not really disputed. The evidence included testimony of Thomas Green, owner of Tranzilli's Real Italian Water Ice, which is located at the intersection, who stated that he experienced flooding several

4

times a year from 2004 to September 8, 2011. Area resident Rasmiyyah Aidah Gaines testified that she experienced flooding at least 40 times before September 8, 2011. She also attended between 12 and 15 meetings with the City Water Department concerning flooding in the area, including at the intersection. During a community meeting on March 2, 2011, the City displayed a map of Lower Germantown that highlighted various areas, including the intersection, as flood prone areas.

Christopher LaSalle testified via videotape deposition that he was employed as a crew chief for the Sewer Maintenance Unit for 20 years. LaSalle acknowledged that an obstructed inlet poses a threat of flooding. He admitted that inlets at three of the four corners of the intersection needed repairs before September 8, 2011, and he conceded that there was no record that the repairs were performed.

Pastor Dunbar testified that he was present during a meeting at City Hall after the September 8, 2011 flooding, which was attended by Joanne Dahme, the City's manager of public affairs, the Water Commissioner, the mayor and other officials, as well as church members and other community residents. Pastor Dunbar recalled the City's mayor stating that the City was aware of flooding in the area for some years and that the City would not expend the amount of money necessary to alleviate the condition. Reproduced Record (R.R.) at 119a-20a.

As to the issue of causation, Dahme acknowledged her March 2011 statement that if the sewers were not clogged with debris they should be capable of draining the storm water. Most relevant to this appeal is the testimony of Kyle Thomas, P.E. Thomas is a licensed professional environmental engineer and specializes in storm water management. He explained how a storm water

5

management system functions and identified factors that impair its functioning. He described how accumulated debris affects the effectiveness of the system, and he testified that age, history of collected debris, history of flooding, and location in a low-lying area are all factors that warrant more frequent inspection, cleaning and repair of a storm water management system. R.R. at 86a-87a.

Thomas visited the intersection of East Haines Street, Belgrave Avenue, and Mulgrave Street, and he reviewed deposition testimony, exhibits, photographs introduced at trial, and records of the Inlet Cleaning Unit and the Sewer Maintenance Unit. Based on his review of that information, he opined that the City did not properly maintain and repair the inlets at and around the intersection. He specifically referenced a history of documented repair orders/requests for inlets at the intersection from March and July of 2011 and stated that the inlets were not adequately inspected or cleaned.

Additional complaint records reflected that in one inlet at the intersection, debris had accumulated to a depth of seven feet in March 2011 and to a depth of nine feet in July 2011. Thomas testified that the accumulation of that much debris in those inlets will result in flooding, noting that the three-foot-high outflow pipe that leads to the sewer system was covered by six feet of debris.

Thomas stated that the lack of maintenance and cleaning at the inlets reduced their functionality and, in light of the intersection's history, was a contributing factor to the dangerous condition that resulted from the flooding at the intersection. R.R. at 88a-94a. Thomas also opined that if the inlets had been functioning properly there would have been less flooding; had the inlets been in good repair they would have conveyed the water out of the area faster and the water that did pond would not have risen so high. R.R. at 97a.

6

The City's evidence included testimony by Christopher Crockett, the City Water Department's director of planning and research, who stated that all of the inlets at the intersection had been cleaned in the months prior to the storm. He said that the City's computer models had shown that in ideal conditions, with the pipes operating at complete capacity, with no problems related to maintenance, there would still be four to six feet of water from the type of event that occurred on September 8, 2011. The City also offered testimony of David J. Littlewood, P.E., who stated that the surcharge of water from the storm was the cause of Plaintiffs' injuries, not the maintenance of the inlets.

The jury found in Plaintiffs' favor; the jury's verdict, entered on January 23, 2015, awarded Mr. Ancrum $1,345,624.00 and Praise Power $458,615.36. On March 17 and 23, 2015, the trial court entered orders denying the City's post-trial motion and granting the City's motion to mold the verdict. The trial court entered judgment for Mr. Ancrum in the amount of $395,000.00 plus delay damages of $18,328.00, and entered judgment for Praise Power in the amount of $105,000.00 plus delay damages of $5,176.50.

After the City filed appeals to this Court and its 1925(b) statement, the trial court issued an opinion concluding that most of the City's claims of error had been waived. The City does not challenge those conclusions and raises only two issues on appeal.

**Discussion**

The City first argues that the trial court erred in denying the City's motion for judgment notwithstanding the verdict (motion for jnov) because the testimony of Plaintiffs' expert was insufficient to establish causation. The City

7

asserts that while Thomas' testimony, if believed, is sufficient to establish that the City was negligent, negligence alone is not enough to hold the City liable; rather, Plaintiffs also had to show that the City's negligence was the proximate cause of their harm.[1]

More specifically, the City contends that Thomas' testimony was insufficient to establish causation because he did not demonstrate *how much* of the flood water was attributable to the City's negligence. The City argues that although Plaintiffs did not need to show that all or most of the water in the intersection was attributable to the City's negligence, Plaintiffs had to demonstrate that the City's negligence was a *substantial* contributing factor to Plaintiffs' harm. The City further maintains that Thomas' testimony was Plaintiffs' only evidence of causation and, because that testimony was not adequate, the trial court should have granted the City's motion for jnov.

Plaintiffs respond that Thomas unequivocally testified that the City's failure to perform repairs and more frequent inspections created a dangerous condition at the intersection due to flooding. Plaintiffs also note, correctly, that the City did not specifically complain that Thomas' causation testimony did not meet legal standards in its concise statement of errors complained of on appeal, and therefore this issue is waived on appeal. (R.R. at 592a-95a.)

Even if the issue was not waived, we note that Thomas' testimony is easily distinguishable from the testimony found inadequate in the cases cited by the City: *Department of General Services v. U.S. Mineral Products*, 898 A.2d 590,

---

[1] The trial court did instruct the jury that it had to decide whether the City's conduct or failure to act was a substantial factor in causing the flooding at the intersection and that the fact that the sewer system flooded was not enough to establish liability. (R.R. at 377a.)

607 (Pa. 2006) (the extent of the necessary remediation response to a chemical contamination of a building was beyond the general experience of lay persons and expert evidence was required); *Swift v. Department of Transportation*, 937 A.2d 1162 (Pa. Cmwlth. 2007) (the appellant's own expert testified that the primary cause of the erosion of the appellant's property was an eighteen-inch pipe on the upstream neighbor's property and was not attributable to conduct of the appellees); and *Kosmack v. Jones,* 807 A.2d 927 (Pa. Cmwlth. 2002) (the expert admitted that he had no data showing that a snow fence would have been effective in preventing snow from blowing onto a road from an embankment such as the one at issue).

In contrast to those cases, here, Thomas explained how a storm water management system functions, and he addressed how different factors impair its proper functioning. Moreover, Thomas' testimony was not the only evidence presented, and the jury could make reasonable inferences from the additional evidence that had the outflow pipe not been obstructed by the accumulated debris the sewers would have drained a substantial amount of the storm water.

Alternatively, the City argues that it is entitled to a new trial because the trial court erred in failing to instruct the jury that the City cannot be held liable for the inadequacy of its sewer system. However, the trial court properly instructed the jury that in order for the City to be liable, the jury had to find that the City negligently maintained its sewer system.[2] The City acknowledges that this

---

[2] The trial court's instructions to the jury included the following statements:

> You may not presume negligence on the part of the defendant based on the mere fact that a plaintiff sustained injuries. The mere happening of the accident is not proof of the defendant's negligence and does not, in and of itself, entitle a plaintiff to recover. An employer is liable for the negligence of its employees

**(Footnote continued on next page…)**

9

instruction reflects applicable law and Plaintiffs' theory of the case. Nevertheless, the City complains that the trial court erred in failing to specifically instruct the jury that a municipality cannot be held liable for the inadequacy of its sewer system, thereby permitting the jury to conclude that the City could be held liable for failing to put higher capacity sewers in place at the intersection and elsewhere. The City argues that the jury instruction was incomplete, noting that Crockett testified that even with the pipes working at full capacity there would have been four to six feet of water at the intersection.

Plaintiffs respond that the above-cited testimony by Crockett was stricken by the trial court because he was a fact witness and was not presented as an expert. R.R. at 262a-65a. Additionally, Plaintiffs note that the City presented no evidence to establish the capacity of the storm water system or the volume of water present at the intersection on September 8, 2011. More importantly,

---

**(continued…)**

> occurring while [they] were acting in the course and within the scope of their employment. . . . Under Pennsylvania law liability may be assessed where it has been proven, by a preponderance of the evidence, that the storm water management system was negligently maintained. Under the law a municipality must take steps to maintain that system or the municipality may be liable for harm caused by the failure to do so. . . . In order for the plaintiffs to recover in this case, the defendant's conduct must have been a substantial factor in bringing about the harm suffered. That is what the law recognizes as legal cause. . . . It is up to you to decide whether the plaintiffs have proven, by a preponderance of the evidence, that the City's conduct of failure to act, as I've previously mentioned, was a substantial factor in causing this flooded intersection. The fact that the sewer system flooded alone is not enough.

R.R. at 144a-48a.

Plaintiffs did not claim that the sewer system was improperly constructed or installed. Finally, while the City relied on *LaForm v. Bethlehem*, 499 A.2d 1373 (Pa. Super. 1985), in requesting those jury instructions, the trial court correctly noted that *LaForm* is distinguishable. In short, *LaForm* involved the question of whether a city was liable for damages resulting from the incidental increase in storm water runoff that flowed into a lower-lying municipality and contributed to a dangerous condition that injured a third person. The court concluded that the city had no duty to control its surface waters.

In contrast, this case involves the City's failure to properly maintain its sewer system, and there is no dispute that a municipality is liable under Pennsylvania law for any damages caused by its failure to maintain a storm water management system. *McCarthy v. City of Bethlehem*, 962 A.2d 1276, 1279 (Pa. Cmwlth. 2008); *City of Washington v. Johns*, 474 A.2d 1199, 1201-02 (Pa. Cmwlth. 1984).

## Conclusion

As to the sufficiency of Plaintiffs' evidence, Plaintiffs offered expert testimony concerning how a storm water management system functions and how specific factors impair its proper functioning. In addition to that expert testimony, Plaintiffs presented additional evidence from which the jury could reasonably infer that accumulated debris in the catch basins obstructed the outflow pipes and that if the inlets were not clogged with debris the storm water would not have risen so high.

As to the trial court's jury charge, the City concedes that the evidence establishes its negligence in the maintenance and repair of the sewer inlets, and

11

that Plaintiffs did not claim that the City failed to provide sewers, or that the sewers as constructed were inadequate for their intended purpose.  We conclude that the trial court properly instructed the jury based on the evidence presented.

Accordingly, we affirm.


_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Praise Power and Deliverance Church | : | |
| | : | No. 623 C.D. 2015 |
| | : | No. 702 C.D. 2015 |
| v. | : | |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Vernon Ancrum, Individually and in his Capacity as Administrator of the Estate of Deanna Nicole Compton, Deceased, 419 West Earlham Terrace, Philadelphia PA 19144 | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia, | : | |
| | : | |
| Appellant | : | |

## O R D E R

AND NOW, this 20th day of July, 2016, the orders of the Court of Common Pleas of Philadelphia County, dated March 17, 2015, are affirmed.

_____
MICHAEL H. WOJCIK, Judge